CAPELLO, Appellant, v. JANECZKO and another, Respondents.

*No. 226.   Argued April 1, 1970.—Decided May 1, 1970.*
(Also reported in 176 N. W. 2d 395.)

For the appellant there was a brief by *Samson & Nash* and *Robert E. Sutton,* all of Milwaukee, and oral argument by *Mr. Sutton.*

For the respondents there was a brief by *Wickham, Borgelt, Skogstad & Powell,* attorneys, and *Thomas N. Klug* of counsel, all of Milwaukee, and oral argument by *Mr. Klug.*

HEFFERNAN, J. The plaintiff testified that at approximately 11:30 p. m. she was proceeding with her roommate in a northerly direction on 50th street, a one-way street, in the city of Milwaukee. As she approached the uncontrolled intersection with Hadley street and when she was a distance of eight to 10 feet south of the intersection with Hadley street, she saw the automobile driven by Janezko about three fourths of a block to her right. She made no observation of the speed at which Janeczko was traveling. She testified she slowed down to a speed of about three to five miles per hour, and as she entered the intersection she shifted gears again, and was traveling approximately seven to eight miles an hour when the Janeczko automobile collided with her vehicle approximately in the center of the

intersection. She was thrown from the automobile and subsequently brought this action against Janeczko.

It developed that Janeczko was uninsured. As a consequence, the uninsured-motorist provisions of Pearl Capello's own liability policy were effective, and her own insurer, the Regent Insurance Company, answered on behalf of Janeczko and denied liability. Janeczko did not appear as a witness, and it was in fact agreed prior to trial that neither party knew his whereabouts.

The defendants called no witnesses other than Dr. Leonard J. Schneeberger, who had been the plaintiff's family physician. Dr. Schneeberger's testimony was to the effect that the plaintiff had not complained to him of any neck injury. There was, however, evidence in the medical record indicating that complaints in regard to neck pains had been made to other physicians who were operating under the general supervision of Dr. Schneeberger.

The plaintiff called Beverly Beavers, Pearl Capello's roommate and her passenger on the night of the accident. After objections to her testimony, the plaintiff's counsel abandoned his interrogation in respect to the speed of the defendant's automobile, and no testimony as to the defendant's speed was elicited from her.

Plaintiff called an engineer, Bruce Koerner, who was allowed to testify as an expert on the basis of his experience and training in the fields of mathematics, physics, and various engineering disciplines. Various objections were made to a hypothetical question submitted to Koerner, but he was permitted to testify that, in his opinion, based upon the location of the two vehicles and assuming the speed of Pearl Capello's automobile to be as she testified, the defendant's automobile was traveling at an average rate of 55 miles per hour. It is undisputed that the speed limit at this point was 25 miles per hour.

A traffic officer, who was called by the plaintiff, testified that the defendant had acknowledged that he had defective brake linings in his rear wheels. On cross-examination the attorney for the *defendant* read into the record a portion of the police report in which Janeczko admitted to traveling 30 miles per hour immediately before the collision. The police officer testified that Janeczko was not intoxicated.

Although supplemental police reports, which included statements of witnesses, were admitted into evidence, they were not submitted to the jury nor were they read into evidence. While counsel for plaintiff indicated his preference to have them go to the jury, he stated he had no strong feeling one way or the other.

On the basis of the evidence, the jury returned a verdict finding the plaintiff 85 percent negligent and the defendant 15 percent negligent. On motions after verdict, the trial judge stated that he had reviewed the evidence and he was satisfied that the findings of negligence and their apportionment were sustained by the evidence of record.

On this appeal the plaintiff asks for a reversal on the ground that the apportionment has been grossly disproportionate. In fact, plaintiff's counsel suggested on oral argument that the jury was confused and it was probably their intention, under the evidence, to attribute only 15 percent of the negligence to the plaintiff. This contention would carry more weight had the matter not been reviewed by the trial court and had he not made the oral finding that the evidence supported the finding as made.

We have frequently stated that, except under most unusual circumstances, this court will not substitute its judgment for that of the jury. In the case of *Delaney v. Prudential Ins. Co.* (1966), 29 Wis. 2d 345, 349, 139 N. W. 2d 48, we delineated standards to be applied by this court in reviewing the verdict of a jury. We stated:

". . . (1) a jury verdict will not be upset if there is any credible evidence which under any reasonable view fairly admits of an inference supporting the findings, (2) this is particularly true when the verdict has the blessing of the trial court, and (3) the evidence is to be viewed in the light most favorable to the verdict." *See also Cornwell v. Rohrer* (1968), 38 Wis. 2d 252, 257, 156 N. W. 2d 373; and *Kalkopf v. Donald Sales & Mfg. Co.* (1967), 33 Wis. 2d 247, 259, 147 N. W. 2d 277.

This rationale has been subsequently approved in numerous cases, including the very recent case of *Hillstead v. Smith* (1969), 44 Wis. 2d 560, 566, 177 N. W. 2d 315. In *Ernst v. Greenwald* (1967), 35 Wis. 2d 763, 773, 151 N. W. 2d 706, we specifically discussed the jury's findings in regard to the apportionment of negligence. We stated therein:

"The apportionment of negligence is a matter particularly within the province of the jury, and it will not be upset except in unusual cases in which the court can find, as a matter of law, that the plaintiff's negligence equaled or exceeded that of the defendant."

In *Hillstead v. Smith, supra,* at page 567, we stated:

"In the absence of patent unreasonableness of the apportionment, we will not substitute our judgment for that of the jury. We adhere to the rule that a jury's apportionment of negligence and a trial court's approval of that apportionment will be set aside only when the ' "percentages of negligence . . . are . . . grossly disproportionate." ' *Milwaukee & Suburban Transport Corp. v. Royal Transit Co.* (1966), 29 Wis. 2d 620, 631, 139 N. W. 2d 595."

While we cannot conclude, on the basis of the record, that our apportionment of negligence would have coincided with that of the jury, neither can we conclude that such apportionment could not have been arrived at under a reasonable view of the evidence.

It appears that the plaintiff saw the vehicle of the defendant approaching from her right. She made no

evaluation of his speed and, without looking a second time, proceeded at an extremely low rate of speed into the intersection and apparently did not further apprise herself of the whereabouts of defendant's car until immediately before the accident. In the absence of any circumstances which would result in the defendant's forfeiture of the right-of-way, he was entitled to rely on that right-of-way and that plaintiff was obliged to yield it to him.

Although expert testimony did come in which tended to prove that the defendant was proceeding at a high rate of speed, such expert testimony was vigorously attacked on cross-examination. It was shown to be subject to all the infirmities that would result from believing implicitly the testimony of Pearl Capello. The jury, of course, was not obliged to give full credence to the plaintiff's statements and could, if it saw fit, disregard the opinion of the expert which was arrived at by hypothesis only. Nevertheless, there stands in evidence undisputed the *res gestae* admission of the defendant to the police officer that he was proceeding at 30 miles an hour, a speed in excess of that legally permitted at that time and place. From this, the jury could conclude, as it may well have, that the defendant had forfeited his right-of-way, and of course he was found negligent. The jury had an opportunity to appraise the demeanor of the plaintiff and could well have concluded that her statements did not ring true and could have disregarded at least a portion of what she stated under oath.

One fact, however, appears clearly in the record and is undisputed—that is, that the plaintiff, without making an observation of a proper nature, proceeded into the intersection in the face of an oncoming vehicle. Moreover, her testimony was impeached in regard to her physical ailments. She testified that she had complained extensively about neck injuries and yet Dr. Schneeberger testified that no such complaints had been made to

him, her regular attending family physician. While examination of the medical records did reveal that some complaints had been made to other examining physicians, her emphasis of such symptoms at trial and the apparent minimal nature of her complaints to her family physician might well have damaged her credibility in the eyes of the jury. Such question as to her truth and veracity may well have affected the jury's appraisal of her testimony in regard to the actual accident.

The evaluation of the evidence, both as to negligence and the percentage of negligence attributable to each party, is a matter for the jury; and although we would conclude that the apportionment of negligence to Pearl Capello is higher than this court would have found had we been the triers of the fact, we cannot from this record conclude that as a matter of law the negligence of Janeczko was greater than that of Pearl Capello.

The attorney for the plaintiff on this appeal, however, takes the additional position that trial errors prevented the proper submission of facts to the jury, and he asks for a reversal on these grounds.

Janeczko was not called by the defense, and plaintiff's attorney therefore asked that the jury be instructed that the failure to call Janeczko gives rise to the inference that, had he been called, his testimony would have been unfavorable to the insurance company. Wisconsin Civil Jury Instruction No. 410 provides:

"410 **Witness: Absence**
"You are instructed that if a party fails to call a material witness within his control, or whom it would be more natural for that party to call than the opposing party, and the party fails to give a satisfactory explanation for his failure to call the witness, then you may infer that the evidence which he would give would be unfavorable to the party failing to call him."

We on numerous occasions have approved such instruction when invoked in a proper case. *Schemenauer, v. Travelers Indemnity Co.* (1967), 34 Wis. 2d 299, 149

N. W. 2d 644; *Ballard v. Lumbermens Mut. Casualty Co.* (1967), 33 Wis. 2d 601, 148 N. W. 2d 65; *Kink v. Combs* (1965), 28 Wis. 2d 65, 135 N. W. 2d 789.

We, however, do not consider that the plaintiff was entitled to this instruction under the circumstances of this lawsuit. The absent-witness inference is discussed in 2 Wigmore, *Evidence* (3d ed.), p. 166, sec. 286. Wigmore points out:

"(*a*) In the first place, the person must be *within the power* of the party to produce. This is unquestioned.

"This lack of power may be due to the person's *absence* from the jurisdiction, or to his illness, or to other circumstances. In particular, it may be due to the *party's ignorance* of the whereabouts of the witness . . . ."

The record reveals that this is clearly the case here. During the course of trial both parties acknowledged that they did not know the present whereabouts of Janeczko. While we do not consider it controlling in this case, this is unlike the situation where an insurance company is obliged to produce its own insured and has some measure of control over him by the cooperation clauses of the insurance contract. In the instant case no contractual relationship existed between the defendant insurance company and the defendant Janeczko. This factor, however, is not controlling when it is clear that neither the plaintiff nor the defendant knew the whereabouts of Janeczko.

The same objection was made in regard to the defendant's failure to produce one Sandra Lee Wolfgram, a passenger in the Janeczko automobile at the time of the accident. That Sandra Lee Wolfgram was within the power of the defendant to produce in court, plaintiff did not even contend was the case. Moreover, if she were available to the defendant, no reason appears of record why she was not available to the plaintiff. Wigmore, *supra*, page 169, sec. 288, points out, "It is commonly said that no inference is allowable where the

person in question is *equally available* to both parties . . . ." Wigmore points out that logically the failure to produce a witness under these circumstances is open to an inference against both parties. We see no error in the court's refusal to submit the absent-witness instruction.

Plaintiff also complains that the court erred in failing to submit Wisconsin Jury Instruction, Civil, 1054, which inquires whether a driver was negligent with respect to the condition of his brakes. The trial judge rejected such instruction but submitted Wisconsin Jury Instruction, Civil, 1052, which instructs that it is the duty of an owner of a motor vehicle to have his car in a reasonably safe condition while operating it upon a public highway. While it may well have been preferable to submit Instruction 1054, since there was specific evidence in regard to an admission by the defendant that his brake linings were defective, we cannot conclude that the general instruction in regard to maintenance of vehicles resulted in prejudice to the plaintiff. It is clear that defective brakes are encompassed within the general duty to exercise ordinary care to have an automobile in a reasonably safe condition when operated upon a highway.

The plaintiff on this appeal also contends that:

". . . the trial judge improperly restricted, diluted, and eviscerated the testimony when presented before the jury, allowed Respondent's counsel to contaminate the hypothetical question proposed to the witness, suggested critical cross-examination to Respondent's counsel and refused to allow the expert witness to give crucial opinion responses."

Although these objections are stated, no specific errors have been cited, nor has any rationale been put forth to convince this court that the trial judge's conduct could be properly so denominated by the plaintiff. We are satisfied from a reading of the entire transcript that no conduct of the trial judge in the respects alleged preju-

diced the rights of the plaintiff on this trial. In view of counsel's failure to itemize his precise objections, we decline to indulge in an exhaustive analysis of these most general allegations made by plaintiff's counsel.

Plaintiff additionally claims that she was entitled to a mistrial because of the conduct of defense counsel during an interruption of the cross-examination of defendant's witness, Dr. Schneeberger. Apparently the record indicates that during cross-examination an attempt was being made by plaintiff to impeach Dr. Schneeberger. At this point, an adjournment was requested for the purpose of supplying the doctor with certain medical records that were not immediately at hand. It was contended by plaintiff's counsel that during this intermission defense counsel conferred with his witness and attempted to rehabilitate him the better to assist him to resist impeachment. The trial judge declined to order a mistrial but admonished defense counsel. We cannot conclude from the record that the conduct of defense counsel was improper. The interruption of the testimony was for legitimate reason and during the break in the proceedings counsel is entitled to confer with his witnesses. There is nothing in the instant case to indicate that defense counsel indulged in any improper "horse-shedding." Plaintiff's counsel was of course free on his continued cross-examination to bring the interim conference between attorney and witness to the attention of the jury. It is not infrequent that witnesses are interrupted at the close of a court day and are then obliged to proceed with their testimony the following morning. It would be a novel proposition to conclude that it is permissible to discuss anticipated questions with a witness prior to trial but to be compelled to abstain from such discussions during breaks in the course of trial. We do not consider the conduct of defense counsel in this case improper, nor was it prejudicial to the plaintiff's cause.

Plaintiff also asked that the jury be told that the defendant Regent Insurance Company was in fact the insurer of Miss Capello and not the insurer of Mr. Janeczko. We know of no reason why the instruction asked for by the plaintiff should have been given to the jury. Perhaps it was the intent of the plaintiff to show that the defendant was an irresponsible person because he drove an uninsured car. If the inculcation of such a belief in the minds of the jury were the object of this instruction, it would have been improper to give. Conversely, if, as plaintiff contends on this appeal, the jury assumed that the Regent Insurance Company was Janeczko's own insurer, it is difficult to understand why the jury's impression that Janeczko was insured would have adversely affected the plaintiff. We see no merit in this contention.

Accordingly, we conclude that the trial was free from prejudicial error and the evidence considered by the jury was based upon proper instructions and on proper rulings of evidence. Under these circumstances, the question of the findings of negligence and their apportionment were for the jury. On the basis of the evidence thus before the jury, we are satisfied that the jury could properly find that 85 percent of the negligence was attributable to the plaintiff and 15 percent of the negligence was attributable to the defendant.

*By the Court.*—Judgment affirmed.