K.A.G., a minor, by Cindra R. Carson, guardian ad litem, and D.F.G. and S.M.G., Plaintiffs-Appellants,†

v.

Chester W. STANFORD, Defendant,†

Shirley STANFORD, in relation to their marital property, Defendant-Co-Appellant,

GENERAL CASUALTY COMPANY OF WISCONSIN and Heritage Mutual Insurance Company, Defendants-Respondents.

Court of Appeals

*No. 88-0405. Submitted on briefs November 29, 1988.—Decided December 6, 1988.*

(Also reported in 434 N.W.2d 790.)

† Petition to review denied.

For plaintiffs-appellants there were briefs by *Harry R. Hertel,* of *Hertel, Carson, White, Schilling & Barr, S.C.* of Eau Claire.

For defendants and co-appellant there were briefs by *Paul Gordon,* of *Sinclair & Gordon, Ltd.* of Chippewa Falls.

For defendant-respondent, Heritage Mutual Insurance Company, there were briefs by *Edmund Many-*

*deeds III*, of *Garvey, Anderson, Kelly & Ryberg, S.C.* of Eau Claire.

For defendant-respondent, General Casualty Company of Wisconsin there was a brief by *Daniel A. Enright*, of *Wilcox & Wilcox* of Eau Claire.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J.  K.A.G. and Chester and Shirley Stanford appeal a summary judgment that dismissed the Stanfords' insurer, General Casualty Company of Wisconsin.[1] from an action against Chester Stanford for damages resulting from his sexual molestation of K.A.G., a six-year-old girl. The trial court stated that whether coverage was barred by the policy's intentional act exclusion depended on a factual determination as to whether Stanford subjectively intended or expected injury to K.A.G. However, it granted General Casualty's motion for summary judgment based on its conclusion that the insured had no reasonable expectation of coverage in his homeowner's policy for damages caused by his intentional acts of sexual abuse. Because the act of a sexual assault on a minor is so likely to result in injury that intent to injure may be inferred as a matter of law, we affirm.

The facts are undisputed. Chester, a sixty-three-year-old male, owned and operated a trailer court where he resided with his wife. K.A.G. and her parents lived in one of the trailers in the trailer court. K.A.G. frequently visited the Stanfords' home. Chester admits that on at least one occasion between the fall of 1983 and Febru-

[1]Before January 8, 1984, Chester Stanford held a homeowner's insurance policy issued by Heritage Mutual Insurance Company; after that date, his policy was issued by General Casualty Company. In this opinion, we will refer to General Casualty as the Stanfords' insurer.

160

ary, 1984, he had unlawful and unauthorized sexual contact with K.A.G. However, he denied that he intended to harm K.A.G. as a result of his conduct.

K.A.G. and her parents filed an action against Chester and Shirley Stanford[2] and their insurer for damages allegedly incurred by K.A.G. as a result of Chester's conduct. The insurer's brought a motion for summary judgment based on the policy's intentional act exclusion. They also argued that no reasonable person would have expected a homeowner's insurance policy to include coverage for damages resulting from a sexual assault perpetrated by an insured on the premises and that the insurer was prejudiced by the Stanfords' failure to notify it of K.A.G.'s claim against Chester. The trial court granted the motion after concluding that no reasonable person would expect coverage for Chester's conduct.

■

Summary judgment is proper if there is no genuine issue as to any material fact and one party is entitled to judgment as a matter of law. Sec. 802.08(2), Stats. When reviewing a trial court's summary judgment, we apply the same statutory standards as the trial court. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987).

Both policies in question provided the following coverage:

> If a claim is made or a suit is brought against any insured for damages because of bodily injury or property damage ... to which this coverage applies, we will:

---

[2]Shirley Stanford was named as a defendant only because a judgment against Chester might indirectly affect her marital property.

    a. pay up to our limit of liability for the damages for which the insured is legally liable; and
    b. provide a defense at our expense by counsel of our choice.

However, the policy also contains an exclusion that excludes liability for bodily injury or property damage "which is expected or intended by the insured." K.A.G. argues that this exclusion does not apply here because although Chester's acts were intentional, he did not expect or intend to cause injury to K.A.G. The issue, therefore, is whether the policy's intentional act exclusion eliminates coverage where the insured intends conduct that is almost certain to cause injury but claims that he did not intend to cause injury.

While this particular issue has not been addressed in Wisconsin, similar intentional act exclusions have been interpreted in different contexts. In *Pachucki v. Republic Ins. Co.,* 89 Wis. 2d 703, 278 N.W.2d 898 (1979), the supreme court concluded that an intentional act exclusion precluded coverage as long as the insured actor intended some harm or injury, even though he did not intend the injury actually incurred. In discussing the intent that must be proven to invoke the exclusion, the court cited W. Prosser, Handbook of the Law of Torts, sec. 8, at 31–32 (4th ed. 1971);

> Intent, however, is broader than a desire to bring about physical results. It must extend not only to those consequences which are desired, but also to those which the actor believes are substantially certain to follow from what he does. ... The man who fires a bullet into a dense crowd may fervently pray that he will hit no one, but since he must believe and know that he cannot avoid doing so, he intends it. The practical application of this principle has meant that where a reasonable man in

the defendant's position would believe that a particular result was substantially certain to follow, he will be dealt with by the jury, or even by the court, as though he had intended it. (Footnote omitted.)

*Pachucki,* 89 Wis. 2d at 711, 278 N.W.2d at 902. While the court did not elaborate on this illustration, the included section suggests the court's implicit recognition that where an actor's conduct is substantially certain to result in injury, the existence of such an intention may be inferred as a matter of law without regard to the actor's claimed intent.

Therefore, for purposes of the intentional act exclusion, intent to injure may be inferred where injury is substantially certain to result from an insured's intentional conduct. However, the applicability of this rule is narrow. For it to apply, two requirements must be met. First, the conduct must be intentional. Second, the conduct must be substantially certain to cause injury. If these conditions are met, the rule will only be applied if the degree of certainty that the conduct will cause injury is sufficiently great to justify inferring intent to injure as a matter of law.

In *Poston v. United States Fid. & Guar. Co.,* 107 Wis. 2d 215, 320 N.W.2d 9 (Ct. App. 1982), we concluded that summary judgment on the basis of an intentional act exclusion was inappropriate where the insured's actions permit the inference that he acted without intention or expectation of injury. There, the insured intentionally poured gasoline over the plaintiff, which was then later ignited, apparently without the insured's encouragement, by a third party. This result is consistent with *Pachucki* because one cannot say that the insured's actions were substantially certain to

cause injury where a third party unexpectedly and independently ignited the gasoline.

Nor is negligent behavior to a high degree considered intentional conduct. In *Peterson v. Western Cas. & Sur. Co.,* 5 Wis. 2d 535, 93 N.W.2d 433 (1958), the insured rapidly backed up his car while trying to evade law enforcement officials, hitting one of them. The court stated that "gross negligence" is not the same as intentional wrongdoing for the purpose of determining coverage under the intentional act exclusion of a liability insurance policy. In contrast to sexual conduct involving a minor, the act of backing up a car, although extremely negligent under the circumstances of that case, is not sufficiently certain to cause injury so as to invoke this rule.

These cases do not discuss whether intent to injure exists in a situation where, for example, an actor intentionally fires a rifle into a house or a crowded room but claims that he did not intend to injure anyone. Although neither negligence nor certain kinds of intentional conduct are substantially likely to cause injury so as to warrant an inference of an intent to injure, certain types of intentional conduct do reach this level. While we need not now identify the parameters of this category of conduct, we conclude that the sexual molestation of a minor falls within this category. Our conclusion is not only consistent with prior decisions of Wisconsin courts, but is the result reached in the majority of other jurisdictions that have considered the particular issue involved in this case.[3]

[3]*See Allstate Ins. Co. v. Gilbert,* 852 F.2d 449, 452 (9th Cir. 1988); *Altena v. United Fire & Cas. Co.,* 422 N.W.2d 485, 490 (Iowa 1988) (involved adult victim); *Harpy v. Nationwide Mut. Fire Ins.*

We note that the applicability of the rule articulated here is not susceptible to a bright-line test and must be considered on a case-by-case basis; the more likely harm is to result from certain intentional conduct, the more likely intent to harm may be inferred as a matter of law. For the purpose of this case, we conclude that acts of sexual molestation against a minor are so certain to result in injury to that minor that the law will infer an intent to injure on behalf of the actor without regard to his or her claimed intent.[4] Because the issue has not been raised, we do not address whether Chester caused "bodily injury" to K.A.G. as it is defined in the insurance policy.

The trial court reached the same result but adopted a different analysis for its decision. Based on *Rodriguez v. Williams,* 713 P.2d 135 (Wash. Ct. App. 1986), the trial court dismissed the Stanfords' insurers because no reasonable person would expect a homeowner's insurance policy to provide coverage for damages resulting from his sexual misconduct, especially when the language in the intentional act exclusion would alert a reasonable person that injury inflicted

Co. 545 A.2d 718, 723 (Md. Ct. Spec. App. 1988); *Linebaugh v. Berdish,* 376 N.W.2d 400, 405 (Mich. Ct. App. 1985); *Horace Mann Ins. Co. v. Independent Sch. Dist. No. 656,* 355 N.W.2d 413, 416 (Minn. 1984); *Fireman's Fund Ins. Co. v. Hill,* 314 N.W.2d 834, 835 (Minn. 1982); *Rodriguez v. Williams,* 729 P.2d 627, 630 (Wash. 1986); *but see MacKinnon v. Hanover Ins. Co.,* 471 A.2d 1166, 1167 (N.H. 1984); *State Auto Mut. Ins. Co. v. McIntyre,* 652 F. Supp. 1177, 1219 (N.D. Ala. 1987); *Zordan v. Page,* 500 So. 2d 608 (Fla. Dist. Ct. App. 1986).

[4] *N.N. v. Moraine Mutual Ins. Co.* 148 Wis. 2d 311, 434 N.W.2d 845 (Ct. App. 1988) does not conflict with this holding because in that case the actor's intent to commit the sexual assault was disputed, whereas here, only the actor's intent to injure is disputed.

intentionally is not subject to coverage. *See also Altena,* 422 N.W.2d at 490. In view of our analysis, it is not necessary to address that of the trial court. We do note, however, that the court's analysis is based upon sound legal principles and may present a viable alternative analysis to achieve the same result that we have reached.

Finally, we reject Shirley Stanford's argument that General Casualty had a duty to represent her in this action notwithstanding any actual or inferred intent to injure on the part of her husband. Shirley is not being accused of any wrongdoing. Rather, she is only named because a judgment rendered against Chester may affect marital property. Because K.A.G. is not claiming liability against Shirley, there is no coverage and the insurer has no duty to defend.

*By the Court.*—Judgment affirmed.