N.N., a minor, by her Guardian Ad Litem, Michael J. Donovan, Linda J. Schneider and T.E.N., Plaintiffs-Appellants-Cross Respondents,

v.

MORAINE MUTUAL INSURANCE COMPANY, and Threshermen's Mutual Insurance Company, Defendants-Respondents-Cross Appellants.†

Court of Appeals

*No. 88–0578. Submitted on briefs October 5, 1988.—Decided December 21, 1988.*

(Also reported in 434 N.W.2d 845.)

† Petition to review granted.

313

On behalf of the plaintiff-appellants-cross respondents, the cause was submitted on the briefs of *Michael J. Donovan* of *Hausmann, McNally & Hupy, S.C.,* of Milwaukee.

On behalf of the defendants-respondents-cross appellants, the cause was submitted on the briefs of *Laurie J. McLeRoy* of *Riordan, Crivello, Carlson & Mentkowski,* of Milwaukee.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

BROWN, P.J.   This appeal from a grant of summary judgment questions whether a plea of guilty to sexual assault pursuant to sec. 940.225(1)(d), Stats., collaterally estops the victim from then starting a civil

action claiming that the act was the result of negligence. Under the facts of this case, we hold that it does not. The insurance companies cross-appeal from a denial of summary judgment, questioning whether the "notice of occurrence," given eighteen months after the assault but five months before the commencement of civil litigation, was given at a time "as soon as practicable." We do not address the issue.

Sometime in February of 1985, N.N. asserted that in November of 1984 she had been sexually assaulted by John Metz, the insured. Metz was charged with the offense. At the preliminary hearing, N.N., age eight, described the assault as consisting of Metz lying down on the living room floor while she was sleeping, kissing her on the lips, patting her once on the chest and vaginal area through her clothes, and then telling her "please don't tell anybody." Metz then fell asleep with his arm around her.

Metz' account of the night in question begins with his statement that he went to a bar and drank a great deal of beer. He consistently stated that he was so heavily intoxicated that he did not remember leaving the bar or how he arrived at N.N.'s household. He had some memory of approaching the front door of N.N.'s home and letting himself in. He found N.N.'s older sister, whom he had previously dated, asleep on the living room couch. He tried to awaken the sister but was unable to do so. He then fell asleep on the floor.

Although Metz consistently denied any memory of the alleged assault, he eventually pled guilty, and his plea was accepted. By his attorney, he stated that if N.N. claimed he assaulted her, then it must be true. At sentencing he told the trial court that he "never meant for this [assault] to happen."

Three weeks after sentencing, Metz' insurance company was notified of a possible claim under a homeowners' policy issued to Metz' parents. That policy provides coverage for "all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence." An "occurrence" is defined as "an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured." The policy excludes coverage for bodily injury which is either expected or intended from the standpoint of the insured.

The insurance companies moved for summary judgment on the grounds that N.N. was collaterally estopped from litigating the civil case as the insured had pled guilty to an intent offense in the collateral criminal action. The trial court agreed. In the alternative, the court granted summary judgment on the grounds that there was not factual dispute about Metz' intent to commit the assault.

The insurance companies also moved for summary judgment on the grounds that they did not receive timely notice of the occurrence. The policy provides that notice shall be given "as soon as practicable." While they received notice of the occurrence five months before N.N. filed a claim, the claim was filed eighteen months after the alleged assault. The trial court found the notice timely, or, in the alternative, that facts as to timeliness are in dispute.

In reviewing summary judgment decisions, we independently examine the record to determine whether any genuine issue of material fact exists and whether

the moving party is entitled to judgment as a matter of law. *Kichefski v. American Family Mut. Ins. Co.,* 132 Wis. 2d 74, 78, 390 N.W.2d 76, 78 (Ct. App. 1986). The determinative fact here, that Metz pled guilty to an intentional act, is undisputed. This court is not bound by a trial court finding based on undisputed facts when the finding is essentially a conclusion of law. *Id.* Whether collateral estoppel applies under a given set of facts is essentially a question of law. *Id.*

Moraine and Threshermen's, the two insurance companies who are nonparties to Metz' criminal prosecution, seek to invoke collateral estoppel defensively against N.N., also a nonparty to the criminal prosecution.[1] The insurance companies argue that by virtue of Metz' guilty plea, the issue of his intent to act has necessarily been conclusively resolved.[2]

As in *Kichefski,* a major consideration here is fairness to the victim against whom collateral estoppel

[1] Mutuality of parties is no longer an absolute precondition for the application of collateral estoppel. *Kichefski v. American Family Mut. Ins. Co.,* 132 Wis. 2d 74, 79, 390 N.W.2d 76, 78 (Ct. App. 1986).

[2] Our supreme court has determined that coverage questions arising under insurance policies, such as the instant one, necessitate a factual finding of intent to injure. *Pachucki v. Republic Ins. Co.,* 89 Wis. 2d 703, 711, 278 N.W.2d 898, 902 (1979). Neither party addressed whether collateral estoppel could result in a summary judgment where, as here, the guilty plea does not include an admission of intent to injure. Such a finding was not expressly made by the guilty plea, because intent to injure is not an element of sec. 940.225(1)(d), Stats. Were we to determine that N.N. is estopped from litigating Metz' intent to act, we would then have to determine whether an intent to injure is presumed from a violation of sec. 940.225(1)(d), and/or whether an intent to cause bodily injury could be presumed from the undisputed acts constituting this particular assault. Since we do not find estoppel applicable, those interesting questions are left unresolved.

is asserted. Collateral estoppel is applied equitably, not mechanically. *See In re Tanelli,* 477 A.2d 394, 396 (N.J. Super. Ct. App. Div. 1984). As with *Kichefski,* we are persuaded that N.N. did not have a full and fair opportunity in the criminal action to litigate her claim that Metz negligently assaulted her. N.N. was not a party to that action. The prosecutor's decision to charge and theory of the case were not controlled by N.N. N.N.'s theory of the case was, practically speaking, irrelevant to the criminal proceedings.

■
Therefore, application of collateral estoppel would deny N.N. the opportunity of going forward in an attempt to prove her theory of the events. She would be foreclosed from doing so in part by the alleged wrongdoer who inflicted the harm upon her. Ordinarily, it would be unfair for the victim of a defendant's conduct to be precluded from seeking a civil recovery by defendant's entirely unilateral decision to waive trial of the criminal charge. *Garden State Fire & Cas. Co. v. Keefe,* 410 A.2d 718, 721 (N.J. Super. Ct. App. Div. 1980).

■
Nor would litigating her theory necessitate N.N. taking a position in the civil proceedings diametrically opposed to her limited testimony during the criminal action. *See Kichefski,* 132 Wis. 2d at 80, 390 N.W.2d at 78-79. N.N.'s testimony is not unequivocally inconsistent with the theory that Metz' actions constituting assault were taken while he was in an alcoholic blackout and unable to form intent. N.N.'s testimony at the preliminary hearing was inconclusive as to her position regarding Metz' intent. While the court found the testimony sufficient to establish probable cause and to bind Metz over for trial, we do not think N.N.'s

testimony unequivocally excludes a negligence theory. Metz' level of intoxication was not explored with N.N. She only testified as to his conduct. Her impressions of Metz' coordination, speech patterns, facial expressions, and other indicia of intoxication and supportive of her negligence theory were not elicited on direct or cross-examination. Further exploration of these matters was then foreclosed when Metz took the unilateral action of pleading guilty.

A strong public policy of allowing a victim his or her day in court is more important here than is the conservation of judicial resources and the prevention of inconsistent adjudications. *See id.* at 81, 390 N.W.2d at 79. Accordingly, we hold that N.N. cannot be estopped from asserting that Metz' actions were merely negligent and not intentional.

Moraine and Threshermen's also argue that Wisconsin courts should not allow insurance coverage for felonious acts. We have previously implicitly rejected this position. In *Kichefski,* we did not foreclose coverage, despite insured's prior conviction for aggravated battery.

> Although [the insurance company] in hindsight may prefer to have limited what events or occurrences trigger insurance coverage, when it has failed to do so in the insurance contract itself, this court will not rewrite the contract to create a new contract to release the insurer from a risk it could have avoided through a more foresighted drafting of the policy.

319

*Kremers-Urban Co. v. American Employers Ins. Co.,* 119 Wis. 2d 722, 743–44, 351 N.W.2d 156, 167 (1984).[3]

We turn next to the trial court's alternative ruling: that the undisputed facts presented on summary judgment indicate that Metz' actions and the harm which flows from them were intentional. We disagree.

A grant of summary judgment requires more than an indication of intent. "Intent" is rarely a proper issue for resolution by summary judgment. *Harman v. La Crosse Tribune,* 117 Wis. 2d 448, 457, 344 N.W.2d 536, 541 (Ct. App.), *cert. denied,* 469 U.S. 803 (1984). Further, in Wisconsin the law is that summary judgment should not be granted unless the moving party demonstrates a right to it with such clarity as to leave no room for controversy. Some courts have said that summary judgment must be denied unless the moving party demonstrates a right to it beyond a reasonable doubt. *Grams v. Boss,* 97 Wis. 2d 332, 338, 294 N.W.2d 473, 477 (1980).

The evidence presented on the instant summary judgment motion does not demonstrate with the requisite degree of certainty that Metz intended his actions or any resulting injuries. On one side of the scale is the judgment of conviction. *See* sec. 908.03(22), Stats. Also on this side is N.N.'s testimony that following the acts

---

[3]Moraine and Threshermen's have not argued, and therefore we do not address, the question of whether intoxication is simply irrelevant to intent. A minority of jurisdictions have determined that insurance coverage under policies such as the instant one is unavailable when only intoxication negates intent. *See American Family Mut. Ins. Co. v. Peterson,* 405 N.W.2d 418 (Minn. 1987); *Travelers Ins. Co. v. Cole,* 631 S.W.2d 661 (Mo. Ct. App. 1982), *Allstate Ins. Co. v. Sherrill,* 566 F. Supp. 1286 (E.D. Mich. 1983), *aff'd,* 735 F.2d 1363 (6th Cir. 1984).

constituting assault Metz told her not to tell anybody about the incident. The testimony raises an inference that Metz knew what he was doing and intended his act.

On the other side, however, is the evidence of Metz' extreme intoxication on the night in question, his inability to remember much of the evening, including the assault, and, in tandem, the evidence that these actions are out of character for Metz, who had no prior criminal involvement. These factors together lead to a plausible inference that when Metz acted, his state of mind was negated by his consumption of alcohol. *Gibson v. State,* 55 Wis. 2d 110, 114, 197 N.W.2d 813, 816 (1972).[4]

We do not believe that such an inference can fairly be characterized as preposterous or unreasonable at this juncture. Further, the way in which N.N. describes the alleged assault, her impression of insured's state of mind, and changes in his action or voice, if any, during the incident, might assist the fact finder in ways that the transcript of her testimony at Metz' preliminary hearing cannot reveal. Accordingly, the grant of summary judgment is reversed and the case is remanded to the trial court.[5]

---

[4]On comparable facts, the Louisiana Court of Appeals found that the defendant insurance company had not met its burden of proving the applicability of a similar exclusionary clause. *Nettles v. Evans,* 303 So. 2d 306, 309 (La. Ct. App. 1974).

[5] *K.A.G. v. Stanford,* 148 Wis. 2d 158, 434 N.W.2d 790 (Ct. App. 1988), does not conflict with this case. In *K.A.G.* the defendant did not dispute that he intended to make sexual contact with the victim; he did dispute that he intended to injure her. Here, the intent to sexually assault *is* disputed.

321

We turn last to the insurance companies' cross-appeal. The insurance companies argue that the trial court improperly denied their motion for summary judgment, because the May 19, 1986 notice of an occurrence was not given "as soon as practicable," as required by the policy. They assert that the proper date of notice was, at the latest, March 1, 1985, the day Metz was charged with a violation of sec. 940.225(1)(d), Stats. We decline to address the issue on its merits.

The determination of whether notice is given as soon as practicable is essentially one of fact which is to be based not merely on the passage of time but upon all the facts and circumstances of the particular case. *Ehlers v. Colonial Penn Ins. Co.*, 81 Wis. 2d 64, 67, 259 N.W.2d 718, 720 (1977); *Gerrard Realty Corp. v. American States Ins. Co.*, 89 Wis. 2d 130, 143, 277 N.W.2d 863, 870 (1979). The burden of showing that notice was not timely given lies with the insurer. *Ehlers*, 81 Wis. 2d at 69, 259 N.W.2d at 721.

Moraine and Threshermen's argue that a report should have been made as soon as was practicable following service of the criminal complaint. However, they have not briefed the preliminary issue: "when did [the insured] have reasonable grounds to believe that he was a participant in an accident." *Resseguie v. American Mut. Liab. Ins. Co.*, 51 Wis. 2d 92, 98, 186 N.W.2d 236, 240 (1971).

In the instant case, whether the insured, Metz, was in fact in an "occurrence" is far from clear at this point in the proceedings. "Occurrence" is defined in the policy as an accident resulting in bodily injury neither expected nor intended from the standpoint of the

insured.[6] Metz must therefore have had reasonable grounds to believe that he was in an accident resulting in bodily injury neither expected nor intended from his standpoint before the duty to report arises. Moraine and Threshermen's have not briefed the meaning of these interrelated policy clauses and have not explained why service of the criminal complaint, which contains no allegation of "injury," gave notice as a matter of law that insured had been in an "occurrence." We decline to review an issue that we view as having been inadequately briefed. *In re Balkus,* 128 Wis. 2d 246, 255 n. 5, 381 N.W.2d 593, 598 (Ct. App. 1985).

*By the Court.*—Judgment and order affirmed in part, reversed in part and cause remanded.

---

[6]"Bodily injury" is defined in the policy as "bodily injury, sickness or disease."