Elizabeth HAGEN, Plaintiff-Respondent, †

v.

Gregory GULRUD, Defendant-Respondent,

IMPLEMENT DEALERS MUTUAL INSURANCE
COMPANY, Defendant-Appellant.

Court of Appeals

*No. 88–1020. Submitted on briefs March 8, 1989.—Decided
May 18, 1989.*

(Also reported in 442 N.W.2d 570.)

---

† Petition to review pending. This petition was not decided at
the time the volume went to press. Its disposition will be reported in a
later volume.

For the defendant-appellant the cause was submitted on the briefs of *Randall Skiles,* and *Stern and Skiles Law Office,* of Madison.

For the plaintiff-respondent the cause was submitted on the brief of *Stephen J. Eisenberg,* and *Eisenberg Law Offices, S.C.,* of Madison.

For the defendant-respondent the cause was submitted on the brief of *W. Dan Bell, Jr.,* and *Wm. Andrew Sharp,* and *Bell Law Offices, S.C.,* of Madison.

Before Gartzke, P.J., Dykman and Eich, JJ.

DYKMAN, J.   Implement Dealers Mutual Insurance Company appeals from a judgment requiring it to pay insurance proceeds to Elizabeth Hagen for injuries she suffered when Gregory Gulrud sexually assaulted her. Implement Dealers provided homeowner's insurance to Gulrud's mother. The dispositive issue is whether insurance policy coverage for injuries arising out of a nonconsensual sexual assault were within the reasonable expectations of the contracting parties. Because we conclude they were not, we reverse.

Gregory Gulrud was convicted of the second-degree sexual assault of Elizabeth Hagen, contrary to sec. 940.225(2), Stats.[1] Hagen brought a civil action for injuries she suffered in the assault against Gulrud and Implement Dealers. Implement Dealers' homeowner's policy provides that coverages for personal liability and medical payments to others "do not apply to bodily injury or property damage . . . which is expected or intended by the insured." A jury concluded that Gulrud had unintentionally caused injuries to Hagen, and awarded her damages. Implement Dealers moved for judgment notwithstanding the verdict because, among other reasons, imposing liability violated the "fortuity principle." The trial court denied this motion.

The interpretation of an insurance policy presents a question of law which we resolve de novo. *Cunningham v. Metropolitan Life Ins. Co.*, 121 Wis. 2d 437, 450, 360 N.W.2d 33, 39 (1985). We should construe an insurance

---

[1] Section 940.225(2), Stats., provides in part:

Whoever does any of the following is guilty of a Class C felony:
    (a)   Has sexual contact or sexual intercourse with another person without consent of that person by use or threat of force or violence.

policy as a reasonable person in the position of the insured would understand it. *Hedtcke v. Sentry Ins. Co.,* 109 Wis. 2d 461, 487, 326 N.W.2d 727, 740 (1982).

Implement Dealers argues that the fortuity principle provides an exception to their insurance contract for any non-fortuitous loss, and refers us to Keeton, *Insurance Law,* sec. 5.3 (1971), which discusses certain principles and policies underlying exceptions to insurance coverage which are "implicit in the nature of the agreement and the circumstances to which it applies." *Id.* at 278. The Wisconsin Supreme Court has discussed the fortuity principle, and has adopted some of the specific public policy objectives Keeton discusses.

> [T]he "principle of fortuitousness" . . . is, that insurance covers fortuitous losses and that losses are not fortuitous if the damage is intentionally caused by the insured. Even where the insurance policy contains no language expressly stating the principle of fortuitousness, courts read this principle into the insurance policy to further specific public policy objectives including . . . (4) maintaining coverage of a scope consistent with the reasonable expectations of the contracting parties on matters as to which no intention or expectation was expressed. Keeton, *Insurance Law,* sec. 5.3(a), p. 279 (1971).

*Hedtcke,* 109 Wis. 2d at 483–84, 326 N.W.2d at 738.

Implement Dealers cites language from *State Farm Fire and Cas. Co. v. Williams,* 355 N.W.2d 421, 424 (Minn. 1984), a civil case involving the question of insurance coverage for sexual assault injuries, where the court noted that "[n]either the insured nor the insurer in entering into the insurance contract contemplated coverage against claims arising out of nonconsensual sexual assaults."

4

In *K.A.G. v. Stanford,* 148 Wis. 2d 158, 165, 434 N.W.2d 790, 793 (Ct. App. 1988), we decided a case similar to this one, but on a different theory. We noted that the trial court had dismissed the insurers in that case "because no reasonable person would expect a homeowner's insurance policy to provide coverage for damages resulting from [the defendant's] sexual misconduct . . .." *Id.* We suggested that this alternative analysis, based on that used in *Rodriguez v. Williams,* 713 P.2d 135 (Wash. Ct. App.), *aff'd,* 729 P.2d 627 (Wash. 1986) and *Altena v. United Fire and Cas. Co.,* 422 N.W.2d 485 (Iowa 1988), may be as persuasive as the one used in *K.A.G.,* 148 Wis. 2d at 166, 434 N.W.2d at 793.

The issue is whether allowing coverage in this case conflicts with the principle of law adopted by *Hedtcke,*[2] that is, whether allowing coverage in this case is consistent with the contracting parties' reasonable expectations on matters as to which no intention or expectation was expressed. *Hedtcke,* 109 Wis. 2d at 484, 326 N.W.2d at 738. Although *Hedtcke* denominates this concern as a "specific public policy objective," it is also a rule of insurance contract construction:

> For example, even though the contractual language was ambiguous, there might be no expectation at all, or the expectation might be unreasonable, thus defeating a claimed expansion of coverage beyond the

[2]The dissent correctly points out that neither party cites *Hedtcke.* However, Implement Dealers cites Keeton, *Insurance Law,* sec. 5.3 (1971), as support for its argument that non-fortuitous losses are not covered by its insurance contract. This is the same section from which the *Hedtcke* court took its list of specific public policy objectives. 109 Wis. 2d at 484, 326 N.W.2d at 738. In addition, Implement Dealers cites *Altena,* which addresses these same policies. It would be unfair to conclude that Implement Dealers has waived this issue.

letter of the contract. It seems likely, however, that, even though not often expressed, there has always been an implicit understanding that ambiguities, which in most cases might be resolved in more than just one or the other of two ways, would be resolved favorably to the insured's claim only if a reasonable person in his position would have expected coverage.

Keeton, sec. 6.3(a), p. 352 (footnote omitted).

While no Wisconsin courts have dealt with the issue we address in this case, *Altena* is especially helpful.[3]

[W]e think that neither Senard, in purchasing his homeowner's policy, nor UFC, in issuing it, contemplated coverage against claims arising out of nonconsensual sex acts. As one court noted, "[t]he average person purchasing homeowner's insurance would

---

[3]Hagen contends that *N.N. v. Moraine Mut. Ins. Co.,* 148 Wis. 2d 311, 434 N.W.2d 845 (Ct. App. 1988), holds that "a homeowner's insurance policy which contains an exclusion for bodily injury which is either expected or intended from the standpoint of the insured, does not exclude insurance coverage for felonious acts." *Moraine* does not so hold.

In *Moraine,* we reviewed a trial court's grant of summary judgment in favor of Moraine Mutual Insurance Company. The issues in *Moraine* were whether the plaintiff was collaterally estopped because of her testimony in a criminal proceeding, and whether the insurance policy covered felonious acts. *Moraine* did not decide the issue whether, under *Hedtcke,* the reasonable expectations of the contracting parties would have been to provide coverage for sexual assaults.

In *Raby v. Moe,* 149 Wis. 2d 370, 384, 441 N.W.2d 263, 268 (Ct. App. 1989), we concluded that the fortuity doctrine did not bar a claim for insurance coverage for damages suffered in a shooting during a liquor store robbery. However, in *Raby,* we focused on the public policy of prohibiting people from profiting from their wrongdoing. *Raby* did not address the *Hedtcke* principle we address here.

cringe at the very suggestion that [the person] was paying for such coverage. And certainly [the person] would not want to share that type of risk with other homeowner's policyholders." *Rodriguez,* 42 Wash. App. at 636, 713 P.2d at 137–38.

*Altena,* 422 N.W.2d at 490.

We conclude, as did the court in *Altena,* that a person purchasing homeowner's insurance would not expect that he or she was insuring his or her children against liability for their sexual assaults. We also conclude that this person would not want to remove any deterrence that the threat of a money judgment provides. We deem it good public policy to deter sexual assaults. Because Implement Dealers' policy did not express an intention as to sexual assault coverage, we look to the reasonable expectations of Implement Dealers and Gulrud's mother. *Hedtcke,* 109 Wis. 2d at 484, 326 N.W.2d at 738. Contrary to the position of the dissent, and consistent with *Altena,* we conclude that Implement Dealers and Gulrud's mother would cringe at the very suggestion that they were buying and selling sexual assault insurance.

Because there is no coverage in this case as a matter of law, the jury's finding is irrelevant. We conclude the trial court erred by not granting Implement Dealers' motion for judgment notwithstanding the verdict.[4]

Implement Dealers' attorney sent us a letter dated May 12, 1989, bringing additional authority to our attention: *Brandt et al. v. Threshermen's Mutual Insurance*

---

[4]Because we dispose of this case on this issue, we need not reach the other arguments raised. *See Sweet v. Berge,* 113 Wis. 2d 61, 67, 334 N.W.2d 559, 562 (Ct. App. 1983) (if we dispose of case on one issue, we need not reach other issues raised).

*Co., et al.,* No. 88–1274, unpublished summary disposition (Wis. Ct. App. Feb. 28, 1989). In *Tamminen v. Aetna Casualty & Surety Co.,* 109 Wis. 2d 536, 563–64, 327 N.W.2d 55, 67–68 (1982), the court said:

> We note that the petitioner's attorneys . . . cite and quote from an unpublished opinion of the court of appeals in violation of Rule 809.23(3). The rule provides:
>
> "An unpublished opinion is of no precedential value and for this reason may not be cited in any court of this state as precedent or authority, except to support a claim of res judicata, collateral estoppel, or law of the case."
>
> As the Judicial Council's comments to the rule reveal, the noncitation rule is essential to the reduction of the overwhelming number of published opinions and is a necessary adjunct to economical appellate court administration. Accordingly, violations of the noncitation rule will not be tolerated. Under Rule 809.83(2), we deem the imposition of a penalty of $50 upon the attorneys for the petitioners to be appropriate and direct that such sum be paid by them to the clerk of this court within twenty (20) days of the date of this opinion.

*Tamminen* was decided in 1982. We deem the imposition of a $100 penalty upon Implement Dealers' attorney is appropriate and direct that he pay that sum to the clerk of this court within twenty days of the date of this opinion.

*By the Court.*—Judgment reversed.

EICH, J. *(dissenting).* The jury found that Gulrud did not intend or expect to cause injury to the plaintiff when he sexually assaulted her. This finding, of course, opened the door to coverage under the insurance policy because it defeated the claim that the "intentional acts"

exclusion applied. The trial court stated its "personal[ ] agree[ment]" with the proposition that nonconsensual sexual intercourse or sexual contact should be considered a violent crime. The court nonetheless concluded that it had no authority to overturn the jury's factual findings, given the evidence of record. I agree with the court in both instances. While I, too, find it difficult to understand how an intentional physical assault can be treated as anything other than what it is, the issue in this case was framed as one of fact. And questions of fact are for the jury, not the courts, to determine. *Capello v. Janeczko,* 47 Wis. 2d 76, 80–81, 176 N.W.2d 395, 398 (1970).

That issue, however, is not addressed by the majority. Instead, the appeal is decided on grounds that, despite the jury's verdict, and despite the language of the policy which, given that verdict, would dictate coverage, none should be available in this case because the majority, relying on *Hedtcke v. Sentry Ins. Co.,* 109 Wis. 2d 461, 484, 326 N.W.2d 727, 738 (1982), has concluded that such a result is not consistent with the "reasonable expectations" of the insurance company and Gulrud at the time the policy was taken out.

First, I have been unable to find any such argument in the parties' briefs, nor any citation to *Hedtcke.* As the majority notes, Implement Dealers refers to Professor Keeton's text and to *Altena v. United Fire and Cas. Co.,* 422 N.W.2d 485 (Iowa 1988). But neither reference has anything to do with the "reasonable expectations" principle on which the majority has seen fit to decide this case.

Second, the relevant language of the insurance policy provides that no coverage will be extended for any "bodily injury . . . which is expected or intended by the insured." There is no magic in those words. Courts and

9

juries deal with them and apply them to a variety of factual situations every day. Here, the jury found that Gulrud did not "intend or expect to cause injury to the plaintiff," and there is no suggestion that that verdict lacks support in the record. Given these facts, I do not see how it can be said that coverage for unintended and unexpected injuries was not within the contemplation of the parties when the policy containing that very language was issued. I am even more unwilling to overturn a factually unchallenged jury verdict on such grounds.

The majority opinion concludes by stating its agreement with the principle that sexual assaults should be deterred. I could not agree more. But this appeal is not governed by noble phrases. It is governed by the language of the insurance contract as applied to the facts found by the jury, and I have explained why I believe that language, and those facts, compel coverage in this case.

I would uphold the trial court's denial of the motion for judgment notwithstanding the verdict. And, seeing no error in the other challenged rulings, I would affirm the judgment as entered, and I join in the decision to impose sanction on appellant's counsel for violating sec. (Rule) 809.23(3), Stats.