

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-6-1994

# Aetna, Inc. v. Barthelemy

Precedential or Non-Precedential:

Docket 93-7783

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

## Recommended Citation

"Aetna, Inc. v. Barthelemy" (1994). *1994 Decisions.* Paper 74.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/74

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 93-7783


AETNA LIFE AND CASUALTY COMPANY,

Appellee,

v.

CAROLYN BARTHELEMY; PETER M. BARTHELEMY;
MICHAEL BARTHELEMY; VICKI MCSPARRAN,

Vicki McSparran,

Appellant.


Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 92-cv-00945)

Submitted under Third Circuit LAR 34.1(a)
June 2, 1994

Before:  SCIRICA, NYGAARD and ALDISERT,
Circuit Judges.

(Filed July 6, 1994)


Ralph B.Pinskey
PINSKEY & FOSTER
121 South Street
Harrisburg, PA  17101

ATTORNEY FOR APPELLANT

John L. McIntyre
PFAFF, McINTYRE, DUGAS
& HARTYE

1

OPINION OF THE COURT


ALDISERT, Circuit Judge.

In this diversity case, we must predict whether the Pennsylvania courts would obligate an insurer to defend and indemnify an insured under a homeowner's policy in a state court action in which a female student at Penn State University alleged that she was harmed by the son of the insured as a result of his having sexual relations with her while both were intoxicated. The district court accepted the theory of Aetna Life and Casualty Company, Appellee, that Pennsylvania courts would adopt the inferred intent rule discussed in Wiley v. State Farm Fire & Cas. Co., 995 F.2d 457 (3d Cir. 1993), and entered a declaratory judgment that Aetna had no duty to defend or indemnify the insured.  Vicki McSparran, the plaintiff in the state court action, has appealed the district court's declaratory judgment and argues that Pennsylvania courts would apply the general rule of subjective intent under the circumstances.

The district court had jurisdiction pursuant to 28 U.S.C. § 2201 and § 1332.  We have jurisdiction under 28 U.S.C. §1291.  The appeal was timely filed under Rule 4(a) of the Federal Rules of Appellate Procedure.

The parties have agreed that the Pennsylvania Supreme Court has not addressed the major issue raised in this appeal. Our review of a district court's prediction of how Pennsylvania would interpret the exclusionary clause of a homeowner's policy is plenary. Wiley, 995 F.2d at 459.

For the following reasons, we will reverse the judgment of the district court.

## I.

At the time of the incident giving rise to this litigation, both Ms. McSparran and Michael Barthelemy were students at Penn State University living in the main campus dormitory. At the time of the incident, she was 19 years old and a virgin and he was 18. While listening to the campus radio station, McSparran heard Barthelemy, the disc jockey, announce that the first person to come to the station and dance with him would receive a compact disc. When she arrived at the radio station, McSparran danced with Barthelemy and received a compact disc as promised.

Thereafter, Barthelemy promised McSparran that if she stayed until the conclusion of the radio show and helped him carry his tapes back to his dormitory room, he would give her another compact disc. She agreed, accompanied him to his room and received another disc. While in the room, Barthelemy offered McSparran two drinks of rum and coke, which she accepted. He then promised he would give her another compact disc if she would drink four shots of rum. It is undisputed that McSparran was an

inexperienced drinker, that she had hesitated to drink shots of rum, that Barthelemy assured her that rum was like beer and would not affect her, that she drank four shots of rum in a very short period of time and that she became ill and very drunk.

While McSparran was drinking, Barthelemy also consumed at least two drinks of rum and coke and at least four shots of rum. While McSparran was in an inebriated state, Michael had sexual relations with her.[1]

In her state court complaint, McSparran alleged that Barthelemy was guilty of battery, negligent or reckless conduct and reckless infliction of emotional distress. In his defense, Barthelemy contended that the sexual relations were consensual. McSparran emphasizes that she did not allege that he used force or violence, except for the battery count implications. Moreover, she asserted in each count that he did not "expect or intend that his conduct would cause the specific injuries that were suffered by Plaintiff as a result of his conduct." App. at 22a, 24a, 25a.

In a separate action brought in federal court, Aetna Life & Casualty Company sought a declaratory judgment that it was under no duty to defend or indemnify Barthelemy in the state court action under the intentional harm exclusion in the Barthelemy's homeowner's policy. The defendants below included McSparran, Michael Barthelemy and his parents, Carolyn and Peter M. Barthelemy, who were the named insured. McSparran filed a

[1] Although the alleged misconduct occurred in Michael Barthelemy's dormitory, the parties do not contest the applicability of the Barthelemy's homeowner's policy.

4

motion for summary judgment in the declaratory judgment action, App. at 35a, and Aetna responded with its own motion for summary judgment. App. at 41a.

Relying on our decision in Wiley, the district court granted Aetna's motion for summary judgment and denied McSparran's motion, inferring Barthelemy's intent to harm McSparran as a matter of law from the act of non-consensual sexual intercourse. Aetna Life & Cas. Co. v. Barthelemy, 836 F. Supp. 231, 237 (M.D. Pa. 1993). The district court noted that in Wiley we inferred an intent to harm in a case of child molestation by an insured adult, and concluded that "[t]he Third Circuit's reasons for predicting adoption of the inferred intent rule in cases of child molestation are no less persuasive when the alleged victim is an adult." Id. McSparran's appeal followed.

The Barthelemy's homeowner's policy, issued by Aetna, contains the following exclusion:
> 1.Coverage E – Personal Liability and Coverage F – Medical Payments to Others do not apply to bodily injury or property damage:
>
> a.which is expected or intended by any insured;

App. at 18a.

We must determine whether the inferred intent rule, which we have previously held applicable to the "exceptional case of sexual child abuse by an insured adult," Wiley, 995 F.2d at 461, would apply to the alleged sexual misconduct of Barthelemy.

5

II.

Pennsylvania case law teaches us how to begin an analysis of exclusionary clauses of the type contained in the Barthelemy's homeowner's policy:

> In our state, the exclusionary clause applies only when the insured intends to cause a harm. Insurance coverage is not excluded because the insured's actions are intentional unless he also intended the resultant damage. The exclusion is inapplicable even if the insured should reasonably have foreseen the injury which his actions caused.

United Servs. Auto. Ass'n v. Elitzky, 358 Pa. Super. 362, 371 (1986) (citation omitted). The homeowner's policy in this case excluded bodily injury or property damage "which is expected or intended by any insured."

"An insured intends an injury if he desired to cause the consequences of his act or if he acted knowing that such consequences were substantially certain to result." Id. at 375. For a resulting injury to be excluded from coverage, the test to be applied in Pennsylvania under general liability cases is not whether the insured intended his actions, but whether the insured specifically intended to cause harm. Id. at 372.

As a threshold matter, we will agree with Aetna that McSparran's state court battery count is excluded from coverage because, by definition, the tort of battery requires proof of an intent to cause a harmful or offensive contact. See Restatement (Second) of Torts § 13 (1964).

6

Although Elitzky mandates a "subjective intent" analysis for determining coverage under an exclusionary clause in most Pennsylvania insurance cases, a different analysis is applied in "those exceptional cases involving sexual child abuse." Wiley, 995 F.2d at 460. In "those exceptional cases," many jurisdictions have adopted what is called the "inferred intent" rule: This rule "allows a court to infer an actor's intent from the nature and character of his or her acts" and to "establish conclusively the existence of intent to harm as a matter of law." Id. This presumption is conclusive "notwithstanding the insured's assertion of an absence of subjective intent to harm." Id. Intent may be inferred only "'if the degree of certainty that the conduct will cause injury is sufficiently great to justify inferring intent to injure as a matter of law. . . . [T]he more likely harm is to result from certain intentional conduct, the more likely intent to harm may be inferred as a matter of law.'" Id. at 462 (quoting K.A.G. v. Stanford, 434 N.W.2d 790, 792-93 (Wis. 1988)).

Inferring intent to harm is strong medicine. We noted in Wiley that it has "narrow applicability." Id. We cautioned repeatedly that, "in cases that do not involve sexual child abuse, Pennsylvania has adopted a general liability standard for determining the existence of this specific intent that looks to the insured's actual subjective intent." Id. at 460. Moreover, although we have predicted that Pennsylvania courts would infer intent to harm in cases of child molestation, they have yet to decide this precise issue.

With these precepts guiding our deliberation, we must determine whether, under the facts presented, this is a general liability insurance case in which the court must consider the insured's subjective intent to harm, or whether it is another "exceptional" case in which the court may infer the insured's intent to harm as a matter of law.

III.

The district court extended our teachings in Wiley to the facts at bar, concluding that an intent to harm McSparran could be inferred as a matter of law, notwithstanding Barthelemy's subjective belief that he had consent and McSparran's repeated assertions that he did not intend the harm she suffered. Consequently, the district court held that Barthelemy's conduct came within the exclusionary clause of the homeowner's policy. Barthelemy, 836 F. Supp. at 237. In so doing, we believe the court erred.

In deviating from the general liability rule of considering subjective intent, the district court stated that this court's "reasons for predicting adoption of the inferred intent rule in cases of child molestation are no less persuasive when the alleged victim is an adult. Like sexual contact with a child, sexual assault of an adult is a crime." Id. at 236. The court continued: "Obtaining coverage for the commission of a criminal act is not within the contemplation of the average purchaser of homeowner's insurance." Id.

8

We believe that in analogizing this case to _Wiley_, the district court, to use a popular idiom, pushed the envelope too far. We note first that in this case there is no allegation that a crime was committed. McSparran alleged battery, negligent or reckless conduct and reckless infliction of emotional distress, App. at 22a-25a, but conceded that Barthelemy did not intend the harm she suffered as a result of this tortious conduct. App. at 22a, 24a, 25a. The district court mischaracterized her complaint when it stated that she "allege[d] in the underlying action that Michael Barthelemy induced her to drink alcohol and raped her while she was under the influence." _Id._ at 232. The record discloses that the basis of McSparran's state court complaint was that Barthelemy committed a tort, not a crime.

Moreover, our entire discussion in _Wiley_ was limited to sexual assault on a child. The fact that McSparran's assertions might conceivably give rise to criminal liability is not dispositive of an insured's intent to harm. Were it true that any potential criminal liability would give rise to an inferred intent to harm and, thereby, exclude coverage under a homeowner's policy, we would not have emphasized in _Wiley_ that sexual abuse of a child is a uniquely harmful act calling for the narrowly applied inferred intent rule. We simply would have concluded that, because child molestation is a crime, intent to harm must be inferred as a matter of law. Instead, we recognized in _Wiley_ that subjective intent generally is relevant, even when the insured has pleaded guilty to a crime. 995 F.2d at 466-67; _see_ _Stidham v. Millvale Sportsmen's Club_, 421 Pa. Super. 548, 563

9

(1992) (holding that, because insured's intent to harm remained a material factual issue, summary judgment was inappropriate, notwithstanding the fact that insured shot and killed a stranger in an alcoholic blackout and pleaded guilty to third-degree murder).

Finally, the district court itself recognized the differences between this case and <u>Wiley</u>.  It noted that: (1) the victim in <u>Wiley</u> was the 13-year-old niece of the insured; McSparran was a 19-year-old adult peer of the insured; (2) there was no contention in <u>Wiley</u> that the victim consented; the insured here alleged that McSparran consented; (3) the insured in <u>Wiley</u> pleaded guilty to criminal charges; no criminal charges were filed against the insured here; and (4) here both adult participants in the sexual conduct were intoxicated.  <u>Id.</u> at 236.


                              IV.

Analogies can be considered one of the most important aspects of legal argument.  Analogy is the method used to determine whether factual differences contained in the case at bar and those of the case compared are material or irrelevant.

One must always appraise an analogical argument very carefully.  Several criteria may be used:

- The acceptability of the analogy will vary proportionately with the number of circumstances that have been analyzed.

- The acceptability will depend upon the number of positive resemblances (similarities) and negative resemblances (dissimilarities).

10

> •The acceptability will be influenced by the relevance of the purported analogies. An argument based on a single relevant analogy connected with a single instance will be more cogent than one which points out a dozen irrelevant considerations.

_Wiley_ and the cases cited to support its reasoning stand for the proposition that Pennsylvania courts would depart from the general liability test of subjective intent to cause harm in the limited circumstance of sexual assault upon a child. The reason for the rule of inferred intent is a societal recognition that, because a child lacks the capacity to give consent, sexual activity foisted upon that child by an insured adult raises the irrebuttable inference that the adult intended to harm that child, regardless of the insured's subjective intent. The reason for the rule is inexorably intertwined with the tender age of the child. _See_, _e.g._, _B.B. V. Continental Ins. Co._, 8 F.3d 1288, 1293-94 (8th Cir. 1994) ("Under Missouri law, the crime of deviate sexual intercourse with a person less than fourteen years of age requires no proof of intent on the part of the perpetrator. Thus, the Missouri legislature and the Missouri Supreme Court recognize that sexual molestation of a child is a crime for which the subjective intent of the perpetrator is irrelevant.") (citations omitted). Where a child is not a participant in the act, there is no reason for the rule. And, in the felicitous expression of Karl Llewellyn, "Where stops the reason, there stops the rule."[2]

---

[2] Karl N. Llewellyn, _Jurisprudence: Realism in Theory and Practice_ 217 (1962).

11

Thus, applying the criteria for a proper analogy to the teachings of Wiley, the number of positive resemblances are minimal and the number of dissimilarities extensive -- here, the putative victim was an adult and not a child, there was no allegation of a criminal act but rather of a negligent or reckless act, there was an assertion by the insured of consent and an assertion by the putative victim that the insured did not intend the harm she suffered. Accordingly, our prediction is that Pennsylvania would apply the rule of general liability in this case: For the exclusionary clause to apply, the insurer had to prove that Barthelemy had the specific subjective intent to harm McSparran.

In sum, we hold that the exclusionary clause does not exclude torts of negligence or recklessness. "In the event that the complaint alleges a cause of action which may fall within the coverage of the policy, the insurer is obligated to defend." Stidham, 421 Pa. Super. at 564 (citing Hartford Mut. Ins. Co. v. Moorhead, 396 Pa. Super. 234, 238-39 (1990)).[3]

V.

Under these circumstances we conclude that Aetna failed to meet its burden of proving that the exclusionary clause

_____

[3]Nor may Aetna find comfort in the Pennsylvania criminal code under which voluntary intoxication may not be "introduced to negative the element of intent of the offense." 18 Pa. Cons. Stat. § 308. In this case, no criminal act was alleged and intent plays no role in allegations of negligent and reckless conduct. It would seem that the voluntary intoxication analogy could be used only by claimants to rebut an insurance carrier's invocation of the exclusionary clause. See Wiley, 995 F.2d at 466; Stidham, 421 Pa. Super. at 563.

applied.  We hold that the district court erred in applying the inferred intent rule and that Aetna failed to prove Barthelemy's subjective intent to harm McSparran as a matter of law.

The judgment of the district court in favor of Aetna will be reversed and the proceedings remanded with a direction that the district court grant McSparran's motion for summary judgment to the extent that the negligent and reckless conduct allegations in her state court complaint are not excluded from coverage under the homeowner's policy.