**TITAN INDEMNITY COMPANY,**
Appellant,

v.

Scott C. CAMERON; City of Easton; Andrew Rapp, Executor of the Estate of John E. Rapp, Deceased Andrew Rapp, Appellant,

Scott C. Cameron, Appellant.

Nos. 02–3321, 02–3454, 02–3465, 02–3760.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit
LAR 34.1(a) Sept. 2, 2003.

Decided Sept. 17, 2003.

Before SLOVITER, NYGAARD, and ROTH, Circuit Judges.

*OPINION OF THE COURT*

SLOVITER, Circuit Judge.

Appellant Titan Indemnity Company appeals from the District Court's order denying Titan a declaratory judgment that would have declared that it owed no duty to indemnify Officer Scott Cameron for the death of John Rapp.[1] Titan argues that

---

1. The parties consented to trial before Magistrate Judge Thomas J. Rueter pursuant to 28 U.S.C. § 636(c). We therefore refer to the

Cameron's actions were intentional and are therefore excluded from coverage under the City of Easton's Law Enforcement Officer's Liability Policy. Titan also seeks to appeal from the District Court's order denying summary judgment and from its judgment, filed after a non-jury trial, that, as a matter of both law and fact, Cameron did not intend to harm Rapp.

Andrew Rapp, executor of the estate of John Rapp, filed a cross-appeal. In addition, Titan appeals the District Court's grant of Rapp's Second Supplemental Motion for Attorneys' Fees for legal work performed by Rapp's counsel in connection with Titan's declaratory judgment action.

## FACTS

The undisputed facts were summarized by the District Court. On December 24, 1998, Officer Cameron attempted to render assistance to John Rapp, who appeared to be unconscious at the wheel of his parked but running pick-up truck situated on the side of a road. When Cameron knocked on the driver's side window of Rapp's truck and asked him if he was "okay," Rapp responded by cursing at him and reaching down inside the truck toward his right. Fearing that Rapp might be reaching for a gun, Cameron stepped towards the back of the truck. Cameron believed at that point that Rapp was either under the influence of drugs or intoxicated, a suspicion later confirmed by trial testimony that Rapp's blood alcohol content was 0.16. When Rapp began trying to get the truck in gear, Cameron yelled at him to turn off the engine and attempted to break the driver's side window with his flashlight. Rapp finally put the truck in gear and it lurched left, knocking Cameron to the ground. As Cameron struggled to his feet, the truck hit him a second time.

Cameron drew his weapon and fired one shot at the truck. The shot struck Rapp in the back of the head and killed him.

While Titan repeatedly claims that Cameron fired at the truck from a point-blank range of only 12–18 inches, the evidence was that Cameron was actually 12–18 inches behind the *back bumper* of the truck when he fired.

At the time of Rapp's death, the City of Easton held a Law Enforcement Officers' Liability Policy with Titan (the "Policy"). Pursuant to the Policy, Titan agreed to "pay all sums the insured legally must pay as damages because of personal injury or property damage ... caused by an occurrence resulting from law enforcement activities." App. at 32. The policy defined the term "occurrence" to mean:

an event [including] continuous or repeated exposure to the same condition that results in:

1. Personal injury or property damage the insured did not expect or intend, or

2. Personal injury or property damage, although expected or intended by the insured, if an objectively good faith reason existed to cause such injury or damage.

App. at 31. Included in the Policy's definition of personal injury were bodily injuries and civil rights violations.

## PROCEDURAL HISTORY

Cameron, who was charged with voluntary manslaughter and involuntary manslaughter, pled guilty to involuntary manslaughter on November 4, 1999. Shortly thereafter, two civil suits were filed in Pennsylvania state court against Cameron, one by Rapp's ex-wife Lauralyn Rapp, and one by Rapp's brother, Andrew, who had been named the executor of his estate. These suits were removed to federal court.

relevant orders as entered by the District Court.

In May 2000, Titan sent Cameron a "reservation of rights" letter that informed him of Titan's position as to coverage for the incident, but the letter only referred to the case filed by Rapp's ex-wife. The two cases were consolidated in July 2000 and, with approval of counsel, the action by Rapp's ex-wife was dismissed without prejudice. The remaining action, filed by Andrew Rapp as executor, alleged violations of 42 U.S.C. § 1983 and related Pennsylvania statutes.

Following a jury trial held between August 17, 2001 and August 27, 2001, the jury returned a verdict against Cameron in the amount of $472,955. On October 18, 2001, the District Court granted Titan's motion to intervene in the Andrew Rapp case for the purpose of seeking a declaratory judgment to determine its duty under the Policy to indemnify Cameron for the judgment against him. On June 25, 2002, the District Court heard oral arguments in support of the parties' motions for summary judgment and held a non-jury trial. The District Court denied all motions for summary judgment and denied Titan's request for a declaratory judgment declaring that it owed no duty to indemnify Cameron and entered judgment in favor of Rapp and Cameron ordering Titan to indemnify Cameron for the civil judgment. On September 4, 2002, the District Court granted Andrew Rapp's Second Supplemental Motion for Attorneys' Fees incurred in the declaratory judgment action.

A separate appeal by Cameron from the District Court's February 20, 2002 award of attorney fees for the civil trial ($163,-218.35) is pending. *Rapp v. Cameron,* No. 02–1607 (3d Cir. filed March 4, 2003).

## DISCUSSION

### I. Jurisdiction

The District Court had subject-matter jurisdiction under 28 U.S.C. § 1332. This Court has jurisdiction to review a final judgment of the District Court under 28 U.S.C. § 1291. Titan mistakenly claims that this appeal comes as a review of the District Court's denial of its summary judgment motion. The denial of a motion for summary judgment on the ground that there are genuine issues of material fact is not appealable after trial. *Hopp v. City of Pittsburgh,* 194 F.3d 434, 439 n. 3 (3d Cir.1999). In the instant case, the District Court held a bench trial and denied Titan's request for a declaratory judgment, which this Court now reviews.

### II. Does Titan Have an Obligation to Indemnify Cameron Under the Policy?

The central issue is whether Cameron intended to shoot Rapp. Titan argues that it has no duty under the Policy to indemnify Cameron because his actions were intentional as a matter of law and unjustified by "an objectively good faith reason." Cameron and Rapp contend that Titan must indemnify Cameron because both the facts and the law demonstrate that he acted without intent. We must look to Pennsylvania state law in this diversity case.

### A. Scope of the "Expect or Intend" Clause Under Pennsylvania Law.

The "first step in a declaratory judgment action concerning insurance coverage is to determine the scope of the policy's coverage. After determining the scope of coverage, the court must examine the complaint in the underlying action to ascertain if it triggers coverage." *General Accident Ins. Co. of America v. Allen,* 547 Pa. 693, 692 A.2d 1089, 1095 (1997) (internal citations omitted). The interpretation of the scope of coverage under an insurance contract is a question of law for the court and

is subject to plenary review on appeal. *Med. Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir.1999).

Under Pennsylvania law, a clause that excludes coverage for harm the insured expects or intends is ambiguous as a matter of law because it is unclear whether the word "intend" refers to general intent (i.e. intent to do the act that results in harm) or specific intent (i.e. intent to cause the harm that results). *See United Servs. Auto Ass'n v. Elitzky*, 358 Pa.Super. 362, 517 A.2d 982, 986–87 (1986), *appeal denied*, 515 Pa. 600, 528 A.2d 957 (1987) (table). Pennsylvania courts have resolved this issue by adopting a subjective intent standard which requires that the insured have intended to cause harm of the same general type as that which did occur. *See Elitzky*, 517 A.2d at 987–88 ("Insurance coverage is not excluded because the insured's actions are intentional unless he also intended the resultant damage," but that "[w]e also reject the view that intent means specific intent to cause the precise injury which did occur."); *see also Aetna Life and Cas. Co. v. Barthelemy*, 33 F.3d 189, 191 (3d Cir.1994) (applying the *Elitzky* subjective intent standard). The Pennsylvania Supreme Court has not explicitly adopted the *Elitzky* subjective-intent rule, but Pennsylvania state courts, as well as this court, recognize it to be the proper rule under Pennsylvania law. *See, e.g., Aetna Life and Cas. Co.*, 33 F.3d at 191; *Stidham v. Millvale Sportsmen's Club*, 421 Pa.Super. 548, 618 A.2d 945, 953 (1992).

The District Court made clear that it would not have found for Titan irrespective of which party bears the burden, but cited authority that would have placed the burden on Titan because under Pennsylvania law the "expect and intend clause" functions as an exclusionary provision, which must be strictly construed by a court and proven applicable by the insurer.

*Daburlos v. Commercial Ins. Co. of Newark, N.J.*, 521 F.2d 18, 24–25 (3d Cir.1975) ("[T]he insurer in Pennsylvania must, when invoking an exclusionary provision to defend against coverage, bear the burden of proving that the exclusionary provision is applicable to that particular case.").

Because the Policy defines "personal injury" to include "violations of civil rights," Cameron contends that the "expect or intend" clause applies only if the civil rights violation was intentional. Thus, Cameron argues, Titan can exclude coverage only if it shows that (1) Cameron intended to use force; (2) Cameron intended that his use of force would result in physical injury to Rapp; and, (3) Cameron intended that his use of force would violate Rapp's civil rights. As with the question of burden of proof, however, this appeal can be resolved without deciding this issue because Cameron's specific intent to cause physical injury, much less an intent to violate civil rights, has not been shown.

### B. *Inferred Intent.*

Titan argues that the District Court erred by not finding that Cameron intended or expected to cause bodily harm to Rapp as a matter of law. We exercise plenary review over a district court's formulation and application of legal principles. *See* Local App. R. 28.1(b).

Titan argues that the District Court should have inferred Cameron's intent to harm Rapp as a matter of law. "Inferred intent results when there is an intentional act on the part of the insured and it is inherent in the act that harm will occur." *Minnesota Fire & Cas. Co. v. Greenfield*, 805 A.2d 622, 624 (Pa.Super.Ct.2002), *appeal granted*, 820 A.2d 162 (Pa.2003) (table).

This court introduced the principle of inferred intent into Pennsylvania insurance disputes in *Wiley v. State Farm Fire &*

*Casualty Company,* 995 F.2d 457 (3d Cir. 1993). After Floyd Wiley sexually molested his 13–year old niece in July 1986, her parents filed a civil suit against him to recover money damages for bodily harm to their daughter resulting from her molestation. State Farm argued that the homeowner's policy it issued to Wiley, which excluded coverage for intentional harm, did not insure him from liability for sexual molestation because an intent to harm was inherent in his abusive acts. Although the subjective intent rule prevailed under Pennsylvania law at the time, we predicted that the Pennsylvania Supreme Court "would adopt the inferred intent rule in liability insurance cases involving an insured adult's intentional sexual abuse of a child to raise a conclusive presumption of the insured's intent to harm the victim." *Id.* at 464–65. We reasoned that sexual child abuse was an " 'exceptional case' " in which " 'to do the act is necessarily to do the harm which is its consequence.' " *Id.* at 463 (quoting *Allstate Insurance Co. v. Mugavero,* 79 N.Y.2d 153, 581 N.Y.S.2d 142, 589 N.E.2d 365, 369 (1992)). Pennsylvania state courts adopted the *Wiley* court's reasoning and carved out the same exception to the subjective intent rule for liability cases involving sexual abuse of children. *See, e.g., Aetna Cas. & Sur. Co. v. Roe,* 437 Pa.Super. 414, 650 A.2d 94, 102–03 (1994) (applying inferred intent doctrine to sexual and physical abuse of children in a day school).

Since deciding *Wiley,* we have clearly stated our view that "[i]nferring intent to harm is strong medicine." *Aetna Life and Cas. Co.,* 33 F.3d at 192–93. Yet, Pennsylvania state courts have recently expanded the inferred intent doctrine beyond sexual child abuse. In a case decided two months after the District Court made its decision in this case, parents brought a wrongful death action against a homeowner who sold their daughter the heroin from which she overdosed. *Greenfield,* 805 A.2d at 623–24. The court held that the homeowner's insurer had no duty to defend or indemnify the defendant because his intent to harm could be inferred by his sale of heroin, a dangerous drug that creates the risk of death. *Id.* at 627. This was the first and only expansion of the doctrine of inferred intent under Pennsylvania law beyond the scope of sexual child abuse. One judge dissented and the Pennsylvania Supreme Court granted an appeal on April 23, 2003. *Id.* at 630 (Olszewski, J., dissenting) (stating that the majority "improperly extended the concept of inferred intent"); *appeal granted,* 820 A.2d 162 (Pa.2003) (table).

Titan also cites *Erie Ins. Exch. v. Fidler,* 808 A.2d 587 (Pa.Super.Ct.2002), to support the application of inferred intent in this case. In *Fidler,* also decided after the District Court ruling in this case, the insurer contended that it did not owe a duty to defend and indemnify where the plaintiff had alleged facts that constituted a physical assault but had characterized the cause of action as negligence. Citing *Mutual Benefit Insurance Company v. Haver,* 555 Pa. 534, 725 A.2d 743, 745 (1999), the court ruled that determinations of a duty to defend must be made from the facts alleged in the complaint, not the particular cause of action pled. *Fidler,* 808 A.2d at 590. The *Fidler* court held that the facts of the complaint alleged intentional conduct, not negligence, as a matter of law, thereby relieving the insurer of a duty to defend or indemnify. *Id.*

*Fidler* does not provide the support for which Titan proffers it. It addresses a very different situation than before us here, as the focus of *Fidler* was whether the insurer owed a duty to defend, not indemnify. The court derailed what it believed was a deliberate attempt to avoid insurance exclusions through artful plead-

ing. *Id.* at 590 n. 2. *Fidler* is also factually distinguishable. Whereas there is room for legitimate debate over Cameron's intent, the defendant in *Fidler* threw a classmate against a wall and a desk, rendering him unconscious. There was little doubt that these actions were intended to cause harm of the "same general type" as the injury that resulted, giving the court a much stronger basis to conclude as a matter of law that the complaint alleged intentional conduct.

Titan cites additional case law to provide a basis to infer that Cameron intended the harm to Rapp. As Cameron notes, however, only one of the cases Titan cited was decided under Pennsylvania law, and in that case the court did not infer intent but rather applied the *Elitzky* rule and determined that the insured subjectively intended to harm his victims. *Germantown Ins. Co. v. Martin,* 407 Pa.Super. 326, 595 A.2d 1172, 1175 (1991) (finding subjective intent where the insured said he wanted to shoot everyone in his ex-girlfriend's house, and then did so). Most of the cases Titan cites from other jurisdictions, as the District Court's opinion point out, are distinguishable as they deal with different types of insurance policies, apply standards inconsistent with Pennsylvania law, or were cases in which the insured had a personal grudge against the victim. *See* App. at 171–72.

■ In summary, while Pennsylvania courts have extended the doctrine of inferred intent to include the sale of heroin (at least, pending the appeal of *Greenfield*), they have extended it no further. Whereas sexual child abuse and selling heroin serve no possible positive social purpose, a police officer's use of force in the line of duty may be necessary and appropriate. We are not prepared to make the substantial and unjustified departure from Pennsylvania's established subjective intent rule that Titan requests.

### C. *Cameron's Subjective Intent.*

Titan argues, in the alternative of its inferred intent theory, that the District Court erred in its factual finding that Cameron did not subjectively intend to injure Rapp. Titan argues that Cameron's pretrial statements, in which he said that he was shooting at Rapp's truck to stop it, establish his intent to injure Rapp. At the very least, Titan argues that Cameron must have been substantially certain that he would harm Rapp, satisfying the intent requirement under *Greenfield.* We review a district court's finding of fact for clear error and will reverse "only if it is completely devoid of a credible evidentiary basis or bears no rational relationship to the supporting data." *Shire U.S. Inc. v. Barr Laboratories, Inc.,* 329 F.3d 348, 352 (3d Cir.2003) (internal quotation marks and citation omitted).

■ We conclude that the District Court's finding that Cameron did not intend or expect to injure Rapp has a credible evidentiary basis. As the District Court noted, Cameron testified repeatedly that he aimed at the vehicle, not its driver, and that he did not intend to shoot Rapp. Cameron explained that events moved very quickly, with less than five seconds separating his first knock down by the truck and his shot. Cameron testified that, after being struck by the truck a second time, he did not know whether Rapp's vehicle was moving towards him or away from him. All of these factors contributed to the District Court's conclusion that Cameron did not intend to shoot or injure Rapp.

Titan notes that a September 27, 1999 report prepared by the Easton Police Department states that Cameron shot at the driver of the truck, rather than at the

truck itself, as he later testified. As the District Court stated, this report was a summary of Cameron's words, not a verbatim report. The District Court concluded that Cameron's consistent testimony in court and his statements to the State Police that he did not intend to shoot Rapp demonstrate that he fired at the truck with the intention of getting the driver to stop his vehicle, not that he intended to kill him or otherwise inflict bodily harm upon him. Though possibly inconsistent with the September 27, 1999 report, this finding is not clearly erroneous or lacking in evidentiary basis. Since the District Court's "account of the evidence is plausible in light of the record viewed in its entirety," we must accept it. *Anderson v. Bessemer City,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).[2]

### III. Attorney's Fees for Declaratory Judgment Action

The District Court granted Rapp's Second Supplemental Motion for Attorneys' Fees pursuant to 42 U.S.C. § 1988, to the extent that Rapp claimed such fees against Cameron in connection with his attorneys' efforts in the declaratory judgment action. The court left open the question whether Titan is required to indemnify Cameron for any attorney's fee award for Rapp's post-judgment collection efforts. Titan appeals this decision on the grounds that, under Pennsylvania law, "an insured can recover attorneys' fees incurred in a declaratory judgment only when the insurer has acted in bad faith." Titan Br. at 28. We review the reasonableness of an award of attorney's fees for abuse of discretion, but the legal question subject to plenary review is whether the district court applied the proper standards or procedures. *Rode*

*v. Dellarciprete,* 892 F.2d 1177, 1182 (3d Cir.1990) (citations omitted).

Titan's appeal misconstrues the grounds on which the District Court awarded attorney fees. The court used its discretion under federal, not Pennsylvania, law to award attorney fees as part of the costs in suits to enforce, among other provisions, 42 U.S.C. § 1983. This discretion includes awarding fees for actions to collect on a judgment under § 1983 once it has been awarded. *See Argento v. Village of Melrose Park,* 838 F.2d 1483, 1499 (7th Cir.1988) (awarding plaintiff fees for garnishment proceeding against insurer of a defendant against whom a judgment had been entered in a civil rights action). The District Court did not err in awarding Rapp attorney's fees for the declaratory judgment action because the fees were incurred to collect on a civil rights judgment. Rapp's victory at trial would have been hollow indeed if he "were left with a paper judgment not negotiable into cash except by undertaking burdensome and uncompensated litigation." *Balark v. Curtin,* 655 F.2d 798, 803 (7th Cir.1981).

### CONCLUSION

For the reasons set forth, we will affirm the District Court's orders.

---

**2.** In light of our conclusions, we need not address the cross-appeals filed by Cameron and Rapp.