918 A.2d 659

SHELBY CASUALTY INSURANCE COMPANY, PLAINTIFF–APPELLANT, v. H.T., N.T., I.T. AND J.T., DEFENDANTS–RESPONDENTS,P.G. BY HER G/A/L N.I. AND N.I., INDIVIDUALLY, PLAINTIFFS–RESPONDENTS, v. I.T. AND J.T., DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued January 17, 2007—Reargued telephonically
March 14, 2007—Decided March 26, 2007.

Before Judges SKILLMAN,[1] LISA and GRALL.

*Paul A. Leodori* argued the cause of appellant (*Leodori & Whelihan,* attorneys; *Mr. Leodori,* on the brief). *Hugo Villalobos* argued the cause for respondents, H.T., N.T., I.T. and J.T.

---

[1] Judge Skillman participated only in the reargument.

*William O. Crutchlow* argued the cause for respondents P.G. by her guardian ad litem N.I. and N.I. (*Eichen Levinson & Crutchlow*, attorneys; *Barry R. Eichen*, on the brief).

The opinion of the court was delivered by

LISA, J.A.D.

 The issue presented in this appeal is whether the inferred intent rule, which precludes, as a matter of law, insurance coverage for a sexual assault committed by an adult against a young child, applies when the sexual assault is committed by a minor under fourteen years of age. We hold that the per se rule does not apply and a factual determination must be made on a case by case basis to determine the perpetrator's subjective intent.

We granted Shelby Casualty Insurance Company (Shelby) leave to appeal from denial of its summary judgment motion which sought a declaration that it is not obligated to provide liability coverage under the homeowner's insurance policy it issued to the parents of J.T., a minor, with respect to J.T.'s potential liability for sexually assaulting a six-year-old girl, P.G. When the sexual assault occurred on April 10, 2004, J.T., whose date of birth was May 10, 1990, was one month shy of his fourteenth birthday. In denying Shelby's summary judgment motion, the judge determined that, because of his age, J.T. was "incapable of satisfying the standards for preclusion of the insurance coverage arising from this activity" and did "not have the criminal culpability necessary for preclusion of coverage." To the extent that the judge's rationale suggests that coverage can never be precluded for a sexual assault by a minor under fourteen, we disagree. We nevertheless affirm the order denying summary judgment and remand for further consideration of the coverage issue in accordance with this opinion.

J.T. and his family and P.G. and her family lived in the insured premises. On the morning of April 10, 2004, J.T. and P.G. were alone in a living room in the building. J.T. digitally penetrated P.G.'s vagina, and he penetrated her anus with his penis. At

about 2:00 a.m. on April 11, 2004, with his father present, J.T. gave a sworn statement to law enforcement authorities admitting what he did. His statement concluded with this colloquy:

Q You told her not to tell anybody?

A Yes.

Q Why?

A I guess I don't want to get into trouble.

Q What you did, was it right or wrong?

A Wrong.

Q If you saw [P.G.], would you say sorry to her or no?

A Yes.

J.T. was charged in a juvenile complaint with an offense that, if committed by an adult, would constitute first-degree aggravated sexual assault, *N.J.S.A.* 2C:14–2a. On August 17, 2004, J.T. appeared with counsel before a judge of the Family Part. He pled guilty and, by answering affirmatively to a series of leading questions, provided a sworn factual basis for the offense, which was consistent with the statement he had given to law enforcement. The Family Part judge accepted J.T.'s guilty plea and J.T. was adjudicated delinquent.

On March 2, 2006, J.T. was deposed in this litigation. We have been furnished with only one page of the transcript of J.T.'s testimony, which demonstrates that he again admitted under oath that he intentionally committed the acts of penetration. He was then asked, "And I believe you testified earlier that you knew that was wrong?" At that point, the attorneys for J.T. and his family and P.G. objected, stating, "At the time he said he didn't know it was wrong," but "Now he knows it's wrong." J.T. answered, "Yeah. Now I know." As stated, we have not been furnished with the earlier transcript pages.

The policy provides liability coverage for damages because of "bodily injury" caused by an "occurrence" for which the insured is legally liable. The policy defines "occurrence" as "an accident . . . which results, during the policy period, in . . . '[b]odily injury'[.]'" The policy contains an exclusion from liability coverage for bodily injury "which is expected or intended by one or more 'insureds'

even if the 'bodily injury' ... is of a different kind, quality or degree than expected or intended."

The dispositive issue before us is whether the intentional injury exclusion precludes coverage for harm caused by J.T.'s act. We first note that whether J.T.'s act in committing the sexual assault was intentional is not the controlling question. The parties mistakenly focus on the term "accident," which is undefined in the policy, within the policy definition of "occurrence." It is by now well settled that "the accidental nature of an occurrence is determined by analyzing whether the alleged wrongdoer intended or expected to cause an injury. If not, then the resulting injury is 'accidental,' even if the act that caused the injury was intentional." *Voorhees v. Preferred Mut. Ins. Co.*, 128 *N.J.* 165, 183, 607 *A.*2d 1255 (1992). The controlling issue, then, is whether the insured intended or expected to cause harm to the victim. *See Lyons v. Hartford Ins. Group*, 125 *N.J.Super.* 239, 247, 310 *A.*2d 485 (App.Div.1973), *certif. denied*, 64 *N.J.* 322, 315 *A.*2d 411 (1974).

Generally, the intent or expectation to cause injury is a subjective inquiry, requiring a determination of what the insured actually intended or expected. *Voorhees, supra*, 128 *N.J.* at 184, 607 *A.*2d 1255. However, when the underlying conduct is a sexual assault by an adult on a young child, the overwhelming majority of jurisdictions apply a per se standard, which conclusively presumes an insured's intent to harm. 17 *Appleman on Insurance* § 119.6 at 95 (Holmes ed., 2d ed.2001). This approach, sometimes referred to as the "inferred intent standard," results in a conclusive determination, as a matter of law, which bars liability insurance coverage. *Id.* at 107. The underlying rationale is that "[a]ny adult of normal intelligence and competence knows, or should know, that sexual conduct or contact with a minor is virtually certain to cause injury to that minor. The law will presume that one who acts with such knowledge intends or expects the consequences of that action." *Id.* at 110 (citing *Auto–Owners Ins. Co. v. Brubaker*, 93 *Ohio App.*3d 211, 638 *N.E.*2d 124, 126 (1994)). New Jersey has adopted this approach. *Atlantic Employers v. Tots &*

*Toddlers,* 239 *N.J.Super.* 276, 571 *A.*2d 300 (App.Div.), *certif. denied,* 122 *N.J.* 147, 584 *A.*2d 218 (1990). After canvassing authorities from other jurisdictions, we concluded:

> As a matter of public policy and logic we conclude that the better rule warrants application of the objective approach. A subjective test suggests that it is possible to molest a child and not cause some kind of injury, an unacceptable conclusion. Certainly, one would and should expect some physical or psychological injury or both, to result from such acts. (We do not consider here the exception, where the accused might be mentally incapacitated).
>
> [*Id.* at 283, 571 *A.*2d 300.]

Eight years later, we extended the inferred intent rule to a fifteen-year-old perpetrator. *Prudential Prop. & Cas. Ins. Co. v. Boylan,* 307 *N.J.Super.* 162, 704 *A.*2d 597 (App.Div.), *certif. denied,* 154 *N.J.* 608, 713 *A.*2d 499 (1998). The trial court in that case found coverage, reasoning that because of his age, the perpetrator as a matter of law was deemed to lack the requisite intent or mental capacity to understand the nature of his acts. *Id.* at 166, 704 *A.*2d 597. We rejected that proposition and the notion urged by the perpetrator and victim "that we should declare the law in New Jersey to be that in cases where a minor sexually abuses a much younger child it is the minor's subjective intent that should apply, rather than the objective intent standard that would apply to adults." *Id.* at 168, 704 *A.*2d 597. We allowed that "there may be some basis for considering a minor's subjective intent in other areas of the law involving negligence by minors with respect to sporting events and the like, or where the minors are friends and of the same relative age," but not in the circumstances of a sexual assault perpetrated by a minor against a much younger victim. *Ibid.*

We concluded that "[a]s a matter of law, [the fifteen-year-old perpetrator] intended to injure [the five-year-old victim] when he sexually molested her, and, therefore, is excluded from coverage under the homeowner's insurance policy." *Id.* at 169–70, 704 *A.*2d 597. We also found that the perpetrator did not fit within the "mentally incapacitated" exception mentioned in *Atlantic Employers,* merely because he was "fourteen or fifteen years of age." *Id.* at 168–69, 704 *A.*2d 597.

In our analysis, we adverted to *N.J.S.A.* 2C:4–11 as authority for the proposition that "an individual of fourteen and above is presumed capable of understanding that he committed a wrong." *Id.* at 168, 704 *A.*2d 597. More precisely, the statute provides that "[a] person shall not be tried for or convicted of an offense if . . . [a]t the time of the conduct charged to constitute the offense he was less than 14 years of age, in which case the family court shall have exclusive jurisdiction. . . ." *N.J.S.A.* 2C:4–11a(1). A corresponding provision in the Code of Juvenile Justice likewise provides that the family court is authorized to waive jurisdiction over a juvenile who is at least fourteen years of age at the time of the alleged offense to be tried as an adult in the Law Division, Criminal Part. *N.J.S.A.* 2A:4A–26a(1). These statutory provisions are procedural in nature, setting criteria for prosecuting juveniles, under certain circumstances, as adults. Nevertheless, the fourteen-year-old threshold for waiver is rooted in long-standing common law principles.

In a case dealing with the applicability of the registration and community notification requirements of Megan's Law, *N.J.S.A.* 2C:7–1 to –11, to a ten-year-old offender who pled guilty to an offense against an eight-year-old girl that, if committed by an adult, would constitute second-degree sexual assault, the Supreme Court addressed the significance, in that context, of the fourteen-year-old threshold. The Court stated that the waiver provision "reflects a clear legislative determination that children under fourteen, no matter how serious the offenses with which they are charged, simply are too immature as a matter of law to be tried as an adult." *In re Registrant J.G.*, 169 *N.J.* 304, 325, 777 *A.*2d 891 (2001). Citing several examples, the Court noted the "significant distinction in the Juvenile Code between juveniles over and under the age of fourteen." *Id.* at 325–26, 777 *A.*2d 891. The Court also noted the difference in treatment regarding the admissibility of a confession of juveniles over and under the age of fourteen. *Id.* at 326, 777 *A.*2d 891 (citing *State v. Presha*, 163 *N.J.* 304, 308, 748 *A.*2d 1108 (2000)).

The Court then explained that the "substantial distinction in the criminal responsibility of juveniles over and under the age of fourteen traces its roots to the infancy defense at common law." *Ibid.* The common law rule hinged upon the ability of a juvenile to be capable of entertaining a criminal intent, which, in turn, requires the capability of distinguishing between right and wrong as to a particular act. *Ibid.* (quoting *State v. Monahan,* 15 *N.J.* 34, 48, 104 *A.*2d 21 (1954) (Heher, J. concurring)). The common law rule provides that children under the age of seven are conclusively presumed incapable of entertaining criminal intent; children between ages seven and fourteen are presumed to be incapable of entertaining criminal intent, but the presumption is rebuttable upon a showing by the State in a particular case of sufficient intelligence to distinguish between right and wrong and to understand the nature and illegality of the particular act; and, children over the age of fourteen are rebuttably presumed to be responsible, with the burden on the accused to establish a lack of sufficient intelligence to understand the nature and consequences of his or her act and to know it was wrong. *Id.* at 327, 104 *A.*2d 21 (quoting *Monahan, supra,* 15 *N.J.* at 48, 104 *A.*2d 21 (Heher, J. concurring)).

In *J.G.,* the Court acknowledged that youthful sex offenders may lack "comprehension about the nature and consequences of their actions." *Id.* at 333–34, 777 *A.*2d 891. The Court therefore cautioned trial judges presiding over Megan's Law proceedings involving juveniles under age fourteen "to exercise special care and discretion in determining whether the RRAS [Registrant Risk Assessment Scale] score is a reliable basis for tier classification." *Id.* at 334, 777 *A.*2d 891. The Court noted that the then-current Attorney General Guidelines and RRAS failed to adequately distinguish between adult and juvenile offenders, particularly with respect to "the issues unique to juvenile offenders below age fourteen," *id.* at 333, 777 *A.*2d 891, and therefore urged the Attorney General to make appropriate revisions, *id.* at 334, 777 *A.*2d 891. The Court concluded:

> Were we writing on a clean slate, our inclination would be to exclude juveniles under age fourteen from the sweeping provisions of Megan's Law. In many instances, sexually improper behavior by such young children is more a reflection of inadequate adult supervision, immaturity, inappropriate media exposure, or a prior history of emotional abuse then it is of irremediable sexually predatory inclinations.
>
> [*Id.* at 340, 777 *A.*2d 891.]

The Court held that a separate Megan's Law consequence should apply to offenders who were less than fourteen at the time of the offense. *Cf. A.A. v. Attorney General of New Jersey,* 189 *N.J.* 128, 137, 914 *A.*2d 260 (2007) (concluding that because DNA testing is simply an identification procedure it requires no special exception for juveniles under fourteen).

More recently, the Court considered the Megan's Law consequences applicable to a twelve-year-old offender who pled guilty to an offense that, if committed by an adult, would constitute first-degree aggravated sexual assault against a six-year-old victim. *In re T.T.,* 188 *N.J.* 321, 907 *A.*2d 416 (2006). The issue presented was whether the juvenile, although guilty of the criminal act, was nevertheless subject to the requirements of Megan's Law if his conduct was not "sexually motivated." *Id.* at 325–26, 907 *A.*2d 416. The Court noted that the offender's "lack of sexual motivation does not affect the fact that he committed the predicate offense of aggravated sexual assault and is therefore within the purview of Megan's Law." *Id.* at 334, 907 *A.*2d 416.

The Court again recognized that it is indeed plausible that a juvenile under the age of fourteen could possess the mental capacity to commit an act constituting a sexual criminal offense, while at the same time lacking the capacity to grasp that the commission of that act would result in harm to the victim. There is therefore a distinction to be made between the mental capacity to intentionally commit an act and the mental capacity necessary to understand the harmful consequences of the act. This distinction, recognized with respect to the criminal culpability of a youthful offender, also undergirds the general requirement in insurance law for requiring a determination of an actor's subjec-

tive intent to determine whether harmful consequences of the actor's intentional act were expected or intended.

The underlying rationale for the inferred intent rule with respect to insurance coverage for sexual assaults is that an adult of ordinary intelligence and experience would undoubtedly know that he "would and should expect some physical or psychological injury or both, to result from such acts." *Atlantic Employers, supra,* 239 *N.J.Super.* at 283, 571 *A.*2d 300. In *Boylan,* we were persuaded that the same rule should apply to a fifteen-year-old perpetrator. We are now asked to determine whether the rule should apply to a wrongdoer less than fourteen years old.

The inferred intent doctrine is not an arbitrary legalism. It represents an expression of the inescapable conclusion that any competent adult would subjectively intend or expect that sexually assaulting a young child would cause harm to the child. Thus, there is no need to engage in a factual inquiry regarding the wrongdoer's actual subjective intent, because it may be inferred as a matter of law. Indeed, some courts denominate the doctrine the "substantial certainty rule," *Appleman, supra,* § 119.6 at 98, or the "conclusive presumption rule," *id.* at 109. Courts following this approach "have concluded that sexual misconduct with a minor is objectively so substantially certain to result in harm to the minor victim, that the perpetrator cannot be allowed to escape society's determination that he or she is expected to know that." *Ibid.*

Because the underlying premise of the rule is that the perpetrator, through his or her life experiences, is aware of the certainty of causing harm, the vitality of the rule diminishes with the age, and consequent reduction in the maturity and life experiences, of the offender. At some age, the conclusive presumption cannot be confidently applied. "Although it may be understandable for a court to find as a matter of law that an adult intended to harm a child by sexually abusing that child, it is too broad a leap in logic to find that a minor intended to injure another minor by engaging

in sexual acts." *Allstate Ins. Co. v. Jack S.*, 709 *F.Supp.* 963, 966 (D.Nev.1989).

A variant of the underlying rationale for the inferred intent rule "is a societal recognition that, because a child lacks the capacity to give consent, sexual activity foisted upon that child by an insured adult raises the irrebuttable inference that the adult intended to harm that child." *Aetna Life & Casualty Co. v. Barthelemy*, 33 *F.*3d 189, 193 (3d Cir.1994). The reason for the rule is therefore "inexorably intertwined with the tender age of the child." *Ibid.* This rationale gives recognition to laws that protect minors not only from offenders but from themselves. Indeed, our Criminal Code makes it unlawful to engage in sexual conduct with minors under a particular age, *see N.J.S.A.* 2C:14–2, in recognition of the lack of mental capacity and understanding of the minor to consent to the sexual activity. On this subject, the Supreme Court of Vermont reasoned:

> Thus, if minors cannot appreciate the nature and consequences of, and therefore lack the ability to consent to, sexual activity for purposes of Vermont criminal law, it would be inconsistent to hold that, for purposes of Vermont civil law, when minors engage in sexual acts, as a matter of law, they intend the consequences of their acts. Indeed, "courts cannot seek to protect naive [minors] on the one hand, while inferring the most degrading and unnatural thoughts to them on the other hand." *Allstate Ins. Co. v. Jack S.*, 709 *F.Supp.* 963, 966 (D.Nev.1989) (holding that inferred-intent rule does not apply where a minor sexually abuses another minor); see also [*Allstate Insurance Co. v.*] *Patterson*, 904 *F.Supp.* 1270, 1282 (C.D.Utah 1995)]. ("The reason a child lacks the capacity to consent to sexual activity is because the child cannot fully appreciate the consequences of such activity. But if a child cannot fully appreciate the consequences of sexual activity, that is reason not to hold the child perpetrator to the same standard as an adult."); [*United Servs. Auto Ass'n. v.*] *DeValencia*, 190 *Ariz.* 436, 949 *P.*2d [525, 529 (Ct.App.1997)] ("It is contradictory for the law to attribute to minors a presumptive sexual naivety on the one hand, and to presume their sexual sophistication on the other hand."). Furthermore, "it is inconsistent to rely on the age of the victim in inferring intent, yet ignore the age of the perpetrator." [*Country Mut. Ins. Co. v.*] *Hagan*, 298 *Ill.App.*3d 495, 232 *Ill.Dec.* 433, 698 *N.E.*2d [271, 277 (1998)]; see also *In re G.T.*, 170 *Vt.* 507, 758 *A.*2d [301, 302 (2000)] (statutory rape law does not apply to minor who engaged in sexual intercourse with another minor).
> [*Northern Security Ins. Co. v. Perron*, 172 *Vt.* 204, 777 *A.*2d 151, 160 (2001)].

Improper sexual behavior by a minor is not necessarily accompanied by an understanding of the effect on the victim. For some

minors, for example, their "only experience with sexual matters may be portrayals in the media of sexual contacts between consenting adults, which may leave them ill-equipped to draw the inference that sexual contact with minors is inherently harmful." *Patterson, supra,* 904 *F.Supp.* at 1283.

Courts in some jurisdictions have applied the inferred intent rule to minors and have denied coverage regardless of the minor's age or subjective intent. *See Id.* at 1282. Courts following this policy sometimes reason that "because the act itself is so inherently harmful to the victim, and because subjective intent is irrelevant in cases involving adult alleged perpetrators, the age of the alleged perpetrator is irrelevant." *Perron, supra,* 777 *A.*2d at 159. We reject this line of reasoning as illogical and contrary to the essential foundation of the inferred intent rule. That rule, after all, is nothing more than an expression of the required subjective intent, which is deemed conclusively established when dealing with a competent adult perpetrator and a child victim.

We take no issue with the proposition that sexual molestation of a young child is inherently harmful. But for that harm to be excluded from coverage the wrongdoer must intend or expect to cause it. In our view, insistence on universal application of the inferred intent rule, without regard to the age of the wrongdoer, substitutes arbitrariness for fidelity to the rationale underlying the rule. At some point, at some age, for some young wrongdoers, there is nothing left to commend the rule except to say that it is the rule.

We find a further reason for not applying the inferred intent rule with respect to young offenders. Our jurisprudence interpreting insurance provisions that implicate coverage for intentional acts demonstrates a careful balance between competing policy considerations. *Voorhees, supra,* 128 *N.J.* at 180–81, 607 *A.*2d 1255. On the one hand, our courts have held that public policy denies insurance indemnification for the civil consequences of intentional wrongdoing. *Id.* at 181, 607 *A.*2d 1255 (quoting *Ruvolo v. American Cas. Co.,* 39 *N.J.* 490, 496, 189 *A.*2d 204 (1963)). On

the other hand, our courts recognize the desire to compensate innocent victims with insurance proceeds to the extent that compensation will not condone and encourage intentional-wrongful conduct. *Ibid.* (quoting *Ambassador Ins. Co. v. Montes,* 76 *N.J.* 477, 483, 388 *A.2d* 603 (1978)). In *Burd v. Sussex Mut. Ins. Co.,* the Court stated:

> The exclusion of intentional injury from coverage stems from a fear that an individual might be encouraged to inflict injury intentionally if he was assured against the dollar consequences. Pulling the other way is the public interest that the victim be compensated, and the victim's rights being derivative of the insured's, the victim is aided by the narrowest view of the policy exclusion consistent with the purpose of not encouraging an intentional attack. And the insured, in its own right, is also entitled to the maximum protection consistent with the public purpose the exclusion is intended to serve.
>
> [56 *N.J.* 383, 398–99, 267 *A.2d* 7 (1970) (citations omitted).]

We do not believe that the salutary public policy of discouraging unlawful intentional conduct will be undermined by allowing coverage for the conduct of a youthful wrongdoer who did not actually intend or expect to cause harm to the victim. On the other hand, the equally important public policy of providing a source of recovery through insurance proceeds to an innocent victim would be advanced. Our holding does no violence to the insurance contract. If, indeed, J.T. subjectively intended or expected to cause harm to P.G., coverage will be precluded. If, however, he did not intend or expect to cause such harm, any resulting harm would have been "accidental" within the meaning of the policy terms, thus obligating Shelby to provide the coverage required by its policy.

We therefore conclude that for a sexual offender under the age of fourteen, the inferred intent doctrine does not apply, and the offender's subjective intent must be determined on a case by case basis. We affirm the order denying Shelby's motion for summary judgment and remand for that determination. Affirmed.